Conner G. Nicklas (Wyo. Bar No. 7-5908)
THE FALEN LAW OFFICES LLC
300 East 18th Street
Cheyenne, WY 82003
Ph: (307) 632-5105
Fx: (307) 637-3891
conner@buddfalen.com

Michael A. Columbo *
Mark P. Meuser *
DHILLON LAW GROUP, INC.
177 Post Street, Suite 700
San Francisco, CA 94108
Ph: (415) 944-4996
Fx: (415) 272-2926
mcolumbo@dhillonlaw.com
mmeuser@dhillonlaw.com

Scott E. Gessler *
GESSLER BLUE LLC
7350 East Progress Place, Ste. 100
Greenwood Village, CO 80111
Ph: (720) 647-5320
sgessler@gesslerblue.com

    * Admitted *Pro Hac Vice*

*Attorneys for Defendant*
*Wyoming Secretary of State Chuck Gray*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **EQUALITY STATE POLICY CENTER**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 25-cv-000117-SWS |
| | ) |
| **CHUCK GRAY**, in his official capacity as | ) |
| Wyoming Secretary of State, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR AN ORDER EXTENDING DEADLINES AND RECONSIDERATION OF ITS ORDER THAT THE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION BE DECIDED ON THE PAPERS

## INTRODUCTION

Plaintiff Equality State Policy Center ("Plaintiff") opposes the requested extension by alleging a lack of good cause and urgency based on the July 1, 2025, effective date of HB 156. But Plaintiff's argument that Defendant has failed to demonstrate good cause for his requested extension is unavailing, and Plaintiff's concerns regarding the urgency of this Court issuing a ruling on its May 23 Motion for Preliminary Injunction are overstated, as Defendant Wyoming Secretary of State Chuck Gray's ("Defendant") requested three-week extension poses no prejudice to any voter's right to vote or Plaintiff's derivative interests. There are no elections scheduled through October 2025, and the deadline has not yet expired to ascertain whether or not there will be any elections in November 2025. In short, claims of imminent disenfranchisement on July 1, 2025, are greatly exaggerated.

## ARGUMENT

### A.    There Is Good Cause for This Court to Grant Defendant's Requested Extension.

Plaintiff argues that Defendant has failed to demonstrate "good cause" for this Court to grant Defendant's requested extension. (ECF #30 at 6-9). This view misunderstands the practical realities faced by Defendant. As Plaintiff acknowledges, (*see* ECF #30 at 7), Defendant's counsel obtained authorization to appear as special assistant attorneys general only recently, on June 6, 2025, and June 9, 2025, (ECF #25 at 3). Although Plaintiff rightly commends the Deputy Attorneys General who have previously represented Defendant, the complexity of this case, involving "521 pages of evidence," (ECF #25 at 4), and the "highly fact specific inquiry" that this Court must undertake within the *Anderson-Burdick* framework, *Libertarian Pty. V. Herrera*, 506 F.3d 1303, 1308 (10th Cir. 2007), require Defendant to rely on resources beyond those of his office. Indeed, as discussed *infra*, the rapidity with which Defendant has been required to conduct and formulate

his legal analysis has already resulted in confusion. Defendant's reasonable request for an extension ensures an orderly process and a thoughtful presentation of the issues and evidence, thereby permitting this Court to rule on Plaintiff's Motion for Preliminary Injunction based upon a sufficient and accurate record.

Additionally, Plaintiff incorrectly suggests that the Court's existing schedule is sufficient. (ECF #30 at 8–9). A limited hearing is necessary to supply this Court with a complete record to inform its consideration. As Defendant has stated, there are two to four witnesses who "will help explain how Wyoming will implement [HB 156]." (ECF #25 at 4). Because Plaintiff's argument for a preliminary injunction depends on the manner in which HB 156 will be implemented, brief oral testimony to assist this Court is warranted. Such testimony would significantly clarify factual disputes raised by the parties' written pleadings.

Therefore, good cause exists for this Court to grant Defendant's extension.

**B.    Plaintiff Fails to Establish Immediate Harm or Urgency.**

Plaintiff asserts that this Court must rule on its May 23 Motion for Preliminary Injunction because "if HB 156 goes into effect as scheduled, Plaintiff and its members and constituents will suffer irreparable harm, burdening Plaintiffs' constituents' right to vote and frustrating Plaintiff's ability to carry out its mission." (ECF #30 at 9). For several reasons, Plaintiff's alarm regarding the effective date of HB 156 is misplaced.

*First*, Plaintiff argues that the July 1, 2025, operative date of HB 156 necessitates immediate intervention by this Court. (ECF #30 at 9–10). But, as demonstrated by Plaintiff's own statements, the operative citizenship notation on driver's licenses will not appear until 2026. (ECF #16 at 19) ("Wyoming will begin to denote citizenship on IDs" in January 2026.). Put another way, it will be impossible for any voter who shows the appropriate ID to be denied registration under HB 156 until after January 1, 2026.

Moreover, while HB 156 will become effective July 1, 2025, Wyoming's current election calendar suggests that "it would first apply to the 2026 primary election, over one year from then." (ECF #16-6 at 1). In his Motion, Defendant stated that "the earliest date that any Wyoming resident could be deprived of their right to vote would be August 19, 2025, in only one county." (ECF #25 at 2). Defendant has since learned that the election that was previously thought could occur on August 19, 2025, in Crook County will not occur. Defendant has reached out to all the County clerks, and Defendant is unaware of any special district elections that are occurring on August 19, 2025. Therefore, the earliest confirmed elections to which HB 156 will apply—and, therefore, the earliest scheduled elections for which a Wyoming voter could be denied registration—are elections in November, which have yet to even be announced.  This administrative timeline negates Plaintiff's claims of imminent harm to Wyoming voters that necessitates either a preliminary injunction or a rushed and hearing-less presentation of arguments and evidence.

*Second*, consistent with the lack of harm already noted, Plaintiff's Opposition (and Motion for Preliminary Injunction) rests heavily on speculative scenarios, absent evidence of any specific voter being unable to register. (ECF #30 at 9). Plaintiff asserts the existence of "a plethora of practical issues" voters will face with respect to voter registration under HB 156. *Id.* In support of this contention, Plaintiff cites *Fish v. Kobach*, 840 F.3d 710, 752–53 (10th Cir. 2016) ("*Fish II*"). But the Tenth Circuit's decision in *Fish II* is inapposite. There, the Tenth Circuit recognized the lower court's finding of fact that a Kansas law presented "an almost certain risk that thousands of otherwise qualified Kansans would be unable to vote in November." *Fish II*, 840 F.3d at 753; *Fish v. Kobach*, 189 F. Supp. 3d 1107, 1145 (D. Kan. 2016) ("*Fish I*"). Plaintiff's allegations starkly contrast with the findings in *Fish I*, as Plaintiff has failed to identify a single voter who will be unable to register because of HB 156. With respect to binding precedent on the application of the

3

*Andersen-Burdick* test to alleged infringements on the right to vote, the on-point precedent in the Supreme Court's decision in *Crawford v. Marion County Election Board* controls. 553 U.S. 181, 200 (2008) (injunction denied where Plaintiff failed to identify any injured voters).

And to the extent Plaintiff bases its allegations of harm on its diversion of resources, (ECF #30 at 9–10), Plaintiff has failed to demonstrate how this alleged harm sufficiently resembles the harm recognized in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 369–70 (2024) ("*Havens* was an unusual case, and this Court has been careful not to extend the *Havens* holding beyond its context."). Plaintiff making business decisions to prioritize educating the public about changes in the law does not constitute imminent harm warranting a preliminary injunction, particularly through an unnecessarily hurried process.

Therefore, Plaintiff has failed to demonstrate specific or impending harm to anyone.

*Third*, in a similar vein, Plaintiff has failed to demonstrate how the specific requirements of HB 156 meaningfully differ from those under already existing Wyoming law. Before HB 156, Wyoming law required individuals to produce "acceptable identification as defined pursuant to W.S. 22-1-102(a)(xxxix)" when registering to vote. W.S. 22-3-103(a)(v). Through HB 156, Wyoming introduced to its laws the concept of "Proof of Citizenship" with respect to voter registration. W.S. 22-1-102(a)(lvi). This is a defined legal term of art in the statute that, like prior Wyoming law, merely describes a list of documents that can be presented to confirm a person's eligibility to register to vote. Nothing on the list is novel or controversial, as it largely overlaps with the "acceptable identification" described in earlier Wyoming law. *Compare Registering to Vote in Wyoming: Acceptable Identification for Registering to Vote*, Wyoming Secretary of State (last accessed June 11, 2025), https://sos.wyo.gov/elections/state/registeringtovote.aspx, *with* W.S. 22-1-102(a)(lvi). A Wyoming license or identification card, a tribal identification card, or

another state's driver's license or identification card affirmatively indicating that a person is not a citizen would, of course, not entitle a person to register to vote in Wyoming. As Plaintiff acknowledges, Wyoming will not begin to issue identification with any such indication until 2026. (ECF #16 at 19). Additionally, under current Wyoming law, some of these documents are already needed to vote in person in Wyoming. W.S. 22-2-119.

## CONCLUSION

In short, there is no imminent irreparable harm to Plaintiff or Wyoming voters in the coming weeks that would preclude the Court from allowing Secretary Gray a short additional period of time to gather the necessary evidence for the Court and a hearing for the Court to complete the record and resolve any factual issues. For the foregoing reasons, the Court should grant Defendant's motion to extend the briefing schedule and order a limited hearing to receive oral testimony.

**DATED** this 11th day of June, 2025.

By: */s Mark P. Meuser*
        Michael A. Columbo*
        Mark P. Meuser*
        DHILLON LAW GROUP, INC.
        177 Post Street, Suite 700
        San Francisco, CA 94108
        Ph: (415) 944-4996
        Fx: (415) 272-2926
        mcolumbo@dhillonlaw.com
        mmeuser@dhillonlaw.com

        Conner G. Nicklas (Wyo. Bar No. 7-5908)
        THE FALEN LAW OFFICE LLC
        300 East 18th Street
        Cheyenne, WY 82003
        Ph:  307-632-5105
        Fx:  307-637-3891
        conner@buddfalen.com

Scott E. Gessler*
GESSLER BLUE LLC
7350 East Progress Place, Ste. 100
Greenwood Village, CO 80111
Ph: (720) 647-5320
sgessler@gesslerblue.com

    * Admitted *Pro Hac Vice*

*Attorneys for Defendant*
*Wyoming Secretary of State Chuck Gray*

## CERTIFICATE OF SERVICE

    I hereby certify that on the 11th day of June 2025, a true and correct copy of the foregoing **DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR AN ORDER EXTENDING DEADLINES AND RECONSIDERATION OF ITS ORDER THAT THE PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION BE DECIDED ON THE PAPERS** was served by CM/ECF e-service system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Plaintiff has provided a copy of this brief to counsel for Defendants who have not yet appeared in CM/ECF via email

 

By: */s Mark P. Meuser*
        Mark P. Meuser
        DHILLON LAW GROUP, INC.