Darold W. Killmer, No. 8-6643
Reid Allison*
Madison Lips*
**KILLMER LANE, LLP**
1543 Champa St., Suite 400
Denver, CO 80202
dkillmer@killmerlane.com, rallison@killmerlane.com, mlips@killmerlane.com
Tel: (303) 571-1000

Elisabeth C. Frost*
Katie Chamblee-Ryan*
Daniel Cohen*
Nicole Wittstein*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20002
efrost@elias.law, kchambleeryan@elias.law, dcohen@elias.law, nwittstein@elias.law
Tel: (202) 968-4490

**Admitted Pro Hac Vice*
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | | |
|---|---|---|
| **EQUALITY STATE POLICY CENTER,** | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| **CHUCK GRAY**, in his official capacity as Wyoming Secretary of State, *et al.*, | ) ) ) | Civil Action No. 25-cv-00117-SWS |
| Defendants. | ) ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO AMICUS BRIEF OF THE ARIZONA STATE LEGISLATURE, STATE OF MONTANA, STATE OF KANSAS, 22 OTHER STATES, & GUAM**

Amici claim that Wyoming's HB 156 serves a "vital state interest," Amicus Br. at 14, Doc. 63-1, but tellingly, only four of those states—Kansas, Alabama, Georgia, and Arizona—claim to have "taken similar steps" to require documentary proof of citizenship ("DPOC") for voting. *Id.* at 1.[1] The fact that the vast majority of amici have abstained from enforcing similar demands on their own voters—including states like Texas and Florida with large numbers of foreign-born residents,[2] and states like Montana, Idaho, Utah, South Dakota, and Nebraska that neighbor Wyoming—speaks far louder than the rehash of Secretary Gray's unpersuasive arguments that they offer in their brief. There is no indication that *any* of them have experienced any trouble administering secure and reliable elections without a DPOC requirement.

Even the experiences of the four outlier states offer little support for Wyoming's position. Voters are not required to provide DPOC to vote in federal elections—as Wyoming would require—in Kansas, Alabama, Georgia, or Arizona (or in any other state). Three of these states (all but Arizona) do not even require DPOC to vote in state elections. Thus, just as no state can identify a problem with non-citizen voting warranting a severe statutory response (even Arizona lacks evidence of non-citizen voter fraud, *see Mi Familia Vota v. Fontes*, 129 F.4th 691, 704 (9th Cir. 2025)), none can attest to the successful implementation of a DPOC requirement like Wyoming's.

The failure of Kansas, Georgia, and Alabama to implement their DPOC requirements further underscores that courts have consistently found that such efforts pose an unacceptable risk of disenfranchising citizens. After the Election Assistance Commission's Executive Director

---

[1] New Hampshire also recently enacted a DPOC law that, in the first elections in which it was in effect, had devastating effects on citizen voters. *See, e.g.*, Pl.'s PI Mot. at 3–4, 7, 9, Doc. 16. Amici make no mention of this law—nor any effort to address its severe burdens on citizens—but it is also currently the subject of litigation. *See id.* at n.4.

[2] *See* Shabnam Shenasi Azari, et. al., "The Foreign-Born Population in the United States: 2022," Am. Cmty. Survey Briefs (April 2024), available at https://www2.census.gov/library/publications/2024/demo/acsbr-019.pdf.

granted requests by Kansas, Georgia, and Alabama to modify the federal voter registration form—which these states must accept under federal law, *see* 52 U.S.C. § 20505(a)—to include state-specific DPOC requirements, the D.C. Circuit held that plaintiffs challenging the modification had "a substantial (perhaps overwhelming) likelihood of success on the merits" and enjoined the instruction *to prevent the "substantial risk that citizens will be disenfranchised" by DPOC requirements*. *League of Women Voters of United States v. Newby*, 838 F.3d 1, 9, 12 (D.C. Cir. 2016) (emphasis added); *see also League of Women Voters of United States v. Harrington*, 560 F. Supp. 3d 177, 188–89 (D.D.C. 2021) (granting plaintiffs summary judgment).

As Plaintiff detailed, *see* Pl.'s PI Mot. at 9–11, Doc. 16, litigation over Kansas's DPOC requirement is especially instructive here. Applying *Anderson-Burdick*, the Tenth Circuit affirmed a permanent injunction of the Kansas law, holding the state "failed to introduce sufficiently weighty evidence to justify the burdens imposed on voters." *Fish v. Schwab*, 957 F.3d 1105, 1134 (10th Cir. 2020). The "incredibly slight evidence" that Kansas produced were a few dozen incidents of noncitizen registration over two decades, *id.*; Wyoming has identified only *one*.

As for Alabama and Georgia, they have not actually sought to enforce their proof-of-citizenship laws. *See Newby*, 838 F.3d at 6. Instead, Georgia administers a citizenship-verification requirement that is, by its Secretary of State's admission, "extremely narrow."[3] Persons submitting a paper registration application must provide a driver's license or state ID number, *or* the last four digits of their social security number, *or* an affirmation they lack that information. *See* Ga. Code § 21-2-220.1. Only those who (i) provided a driver's license (or state ID) number, <u>and</u>

---

[3] Br. in Supp. of Defs.' Mot. for Summ. J. at 2, *Ga. Coal. for the People's Agenda, Inc. v. Raffensperger*, No. 1:18-cv-04727-ELR (N.D. Ga. Sept. 8, 2021), Doc. 142-1, available at https://www.democracydocket.com/wp-content/uploads/2024/04/1422021-09-08-GA-Secretary-of-States-motion-for-summary-judgment.pdf.

(ii) previously represented to the Department of Driver Services that they lack U.S. citizenship are put in "pending-citizenship status" awaiting proof of citizenship.[4] And unlike Wyoming's HB 156, neither Alabama nor Georgia instructs voters to attach DPOC to their registration application.[5] That leaves Arizona, a unique case even within the outliers. It requires DPOC only from voters who wish to mark a ballot for *state* elections; voters lacking adequate DPOC remain free to vote for President, Vice President, U.S. Senator, and U.S. Representative. *See Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 20 (2013). This distinction underscores Secretary Gray's admission (undisputed by amici) that HB 156 is more stringent than any other state's. Moreover, despite histrionic rhetoric about non-citizen voting affecting election results, an Arizona Senate committee "found no evidence of voter fraud" in the 2020 presidential election (for which DPOC was not required), and the Ninth Circuit aptly described "[t]he allegation that persons who were not citizens swayed the elections results" as "apparently fanciful." *Mi Familia Vota*, 129 F.4th at 704. Then, years after enacting its DPOC requirement, Arizona recognized that tens of thousands of voters lacking DPOC on file were almost certainly eligible voters and that strictly applying the DPOC requirement would impose needless burdens. *See Maricopa Cnty. Recorder Stephen Richer v. Arizona Sec'y of State Adrian Fontes*, No. CV-24-0221-SA, 2024 WL 4299099, at *3 (Ariz. Sept. 20, 2024) (unpublished decision). Arizona law requires voters who were issued driver's licenses before October 1, 1996, to provide DPOC before participating in state elections. *See* Ariz. Stat. § 16-166(F)(1). But officials discovered in the weeks before the 2024 elections that, due to a computer glitch, nearly 100,000 registrants had pre-1996 driver's licenses but had not provided

---

[4] *See* Expert Rep. of Michael Barber at 6–7, *Ga. Coal. for the People's Agenda, Inc.*, Doc. 142-3.

[5] *See* State of Ala. Voter Reg. Form, available at https://www.sos.alabama.gov/sites/default/files/voter-pdfs/nvra-2.pdf; State of Ga. Appl. for Voter Reg., available at https://sos.ga.gov/sites/default/files/forms/GA_VR_APP_2019.pdf

3

DPOC. *Maricopa Cnty. Recorder Stephen Richer,* 2024 WL 4299099, at *2. After the Maricopa County recorder sued the Secretary of State to clarify the status of these voters, the Republican leaders of Arizona's legislative chambers and the Arizona Republican Party filed amicus briefs stating their views on the matter. *Id.* at *1. Crucially, no party—including Arizona's legislative leaders—"suggest[ed] that they believe the Affected Voters are actually not United States citizens," notwithstanding their failure to provide DPOC. *Id.* at *2. And the Arizona Supreme Court emphasized the stipulated fact that "all of the Affected Voters have attested under penalty of perjury to being United States citizens" as a part of the registration process. *Id.* The Court further recognized that strictly applying the requirement would be "to disenfranchise voters en masse from participating in state contests." *Id.* at *3.

Finally, while amici cut and paste excerpts from decisions in the *Mi Familia Vota* litigation over Arizona's election regime, that litigation had a complex procedural history, which amici misconstrue. In fact, after the district court entered summary judgment for plaintiffs on nearly every aspect of Arizona's DPOC requirement, it refused to allow the plaintiffs to submit *Anderson-Burdick* evidence at trial to prove those claims on alternative grounds. *See, e.g.*, *Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929, 1006 n.58 (D. Ariz. 2024), *judgment entered*, No. 2:22-CV-00509-PHX-SRB, 2024 WL 2244338 (D. Ariz. May 2, 2024), *aff'd in part, vacated in part, remanded*, 129 F.4th 691 (9th Cir. 2025); *see also* Mot. for Clarification at 1–2, *Mi Familia Vota v. Fontes*, No. 2:22-CV-00509-PHX-SRB, Doc. 555 (opposed motion seeking to limit trial evidence); Minute Entry, *Mi Familia Vota*, Doc. 600 (granting motion). The only *Anderson-Burdick* claim the court adjudicated was a challenge to Arizona's provision for the cancellation of voter registrations where registrants without DPOC on file *affirmatively indicated on materials in certain state databases that they were not citizens*, and the court's discussion turned on Arizona-specific laws and

4

evidence. *See Mi Familia Vota*, 719 F. Supp. at 1006–10. The court emphasized that the situation before it was different than that in *Fish*, because under the Arizona provision, "Arizona *may not* deny, suspend, or cancel voter registrations when a voter fails to provide DPOC." *Id.* at 1010. Instead, these voters are registered to vote in federal elections "unless county recorders match the registration to information of non-citizenship." *Id.* Wyoming's HB 156—which would prohibit voters without DPOC from registering at all—is thus much more analogous to the regime that was enjoined in Kansas than to the extremely narrow permutation that was permitted in Arizona.

For all that states may posture during legislative sessions (or in amicus briefs) about the specter of non-citizen voting, the fact remains that there is no evidence that it is an actual problem—in Wyoming or anywhere else—and the amici tellingly point to none. While amici claim to fear that the injunction Plaintiff seeks of a Wyoming law in a Wyoming federal court to protect Wyoming voters would broadly and "improperly constrain States' constitutional prerogative to secure their elections," Amicus Br. at 6, this, too, is an illusory concern. *All* election administration, whether by states or Congress, must comply with the First and Fourteenth Amendment's protections of the right to vote. The states' "sovereign authority," upon which amici appears to be most concerned, *id.* at 6, stops decidedly short of any power to substantially burden the franchise without adequate justification. *See Am. Civ. Lib. Union of N.M. v. Santillanes*, 546 F.3d 1313, 1320 (10th Cir. 2008). Because HB 156's strict DPOC requirement does nothing to enhance the security of Wyoming elections while making it substantially harder for many eligible Wyoming citizens to vote, it violates the U.S. Constitution and should be enjoined.[6]

---

[6] Amici's substantive arguments overlap substantially with those of Secretary Gray, which are addressed in Plaintiff's reply in support of the preliminary injunction motion. Plaintiff previously filed an opposition to amici's request for leave to file its brief, requesting in the alternative to brief its reply to the Secretary and response to amici together. Doc. 64. Plaintiff submits this opposition in the event the Court grants amici's motion for leave and considers its brief.

Dated: June 30, 2025               Respectfully submitted,

*/s/ Elisabeth C. Frost*
Elisabeth C. Frost*
Katie Chamblee-Ryan*
Daniel Cohen*
Nicole Wittstein*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20002
efrost@elias.law
kchambleeryan@elias.law
dcohen@elias.law
nwittstein@elias.law
(202) 968-4490

Darold W. Killmer, No. 8-6643
Reid Allison*
Madison Lipps*
**Killmer Lane, LLP**
1543 Champa St., Suite 400
Denver, CO 80202
dkillmer@killmerlane.com
(303) 571-1000

*Attorneys for Plaintiff*
*Equality State Policy Center*
*\*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I certify that on the 30th day of June, 2025, I electronically filed the foregoing notice with the Clerk of the Court for the United States District Court for the District of Wyoming by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Elisabeth C. Frost*
Elisabeth C. Frost
