**MICHAEL E. GATES**
Deputy Assistant Attorney General
**MAUREEN S. RIORDAN**
Acting Chief, Voting Section
**TIMOTHY F. MELLETT**
**ARIELLE R. L. REID**
**KEVIN P. MUENCH**
Trial Attorneys
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue 4CON
Washington, DC 20530
Timothy.F.Mellett@usdoj.gov
Tel: (202) 307-2767

**STEPHANIE I. SPRECHER**
Acting United States Attorney
**C. LEVI MARTIN (WY Bar #6-3781)**
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Christopher.martin@usdoj.gov
Tel: (307) 772-2124

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| EQUALITY STATE POLICY CENTER, | |
| | Civil Case No. 25-cv-00117-SWS |
| Plaintiff, | |
| v. | |
| CHUCK GRAY, in his official capacity as the Wyoming Secretary of State, *et al.*, | |
| Defendants. | |

1

## STATEMENT OF INTEREST OF THE UNITED STATES

When Wyoming voters cast their ballots, they should be confident that their vote is given its due weight, undiluted by fraudulent votes of ineligible voters. This confidence is the bedrock of participatory democracy. Requiring documentary proof of citizenship to register to vote is one valid way for Wyoming to secure the voting process. The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States[.]" This case presents important questions regarding enforcement of the Fourteenth Amendment's voting rights protections. *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189 (2008).

The United States has a substantial interest in ensuring elections are conducted fairly. *See* National Voter Registration Act, 52 § U.S.C. 20507 (establishing federal voter registration requirements to ensure fair election administration, common procedures, and list maintenance best practices); S. Rep. 103-6 at 18 (Feb. 25, 1993) ("The maintenance of accurate and up-to-date voter registration lists is the hallmark of a national system seeking to prevent voter fraud."); *United States v. Gradwell*, 243 U.S. 476, 480 (1917) (holding that the United States has "an interest in . . . honest and fair elections"). "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). Therefore, the United States submits this Statement of Interest for the limited purpose of addressing the legitimate interests of the State of Wyoming in preventing voter fraud and ensuring that citizens have confidence in the administration of elections. The United States takes no position on any other issue before this Court.

I.      **Procedural Background**

On May 9, 2025, the Equality State Policy Center filed a lawsuit against Wyoming Secretary of State Chuck Gray in his official capacity, as well as the county clerks of all counties

in the State of Wyoming ("Wyoming") in their official capacities. Compl., ECF No. 1. The Complaint alleges in relevant part that Wyoming's House Bill 156 ("HB 156") imposes an unconstitutional undue burden on the right to vote in violation of the Fourteenth Amendment to the United States Constitution. *Id.* ¶¶ 242–252. HB 156 is codified in Wyoming law as Wyo. Stat. Ann. §§ 18-16-102, 22-1-102, 22-3-102, 22-3-103, 22-3-117, 22-3-118, and 22-29-104, *id.* ¶ 28, and is slated to become effective today, July 1, 2025, *id.* ¶ 2.

As relevant to this Statement of Interest, HB 156 requires qualified Wyoming voters to provide documentary proof of citizenship ("DPOC") to register to vote. *Id.* ¶ 2; Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj. at 11, ECF No. 65. DPOC includes, but is not limited to: a valid Wyoming driver's license or identification card, a valid tribal identification card from a federally recognized Indian tribe, or a valid state identification that is consistent with the REAL ID Act. County clerks may reject this form of identification if it contains "any indication that the person is not a United States citizen[.]" Compl. ¶ 29 n.2 (quoting Wyo. Stat. Ann. § 22-1-102(lvi)(A)–(C)). DPOC may also include a valid U.S. passport, a certificate of U.S. citizenship, a certificate of naturalization, a U.S. military draft record or a selective service registration acknowledgment card, a consular report of birth abroad issued by the U.S. Department of State, or an original or certified copy of a birth certificate in the United States bearing an official seal. *Id.* ¶ 29; Def.'s Opp'n at 12. The requirements of HB 156 largely mirror current state law that requires voters to produce "acceptable identification" during the voter registration process, with a few differences. Def.'s Opp'n at 11; *see also* Wyo. Stat. Ann. § 22-3-103(v) (2024); Wyo. Stat. Ann. § 22-1-102(a)(xxxix)(A) (2024).

On May 23, 2025, Plaintiff moved for a Preliminary Injunction to enjoin Defendants from enforcing the DPOC requirement in HB 156. Pl.'s Mot. for Prelim. Inj., ECF No. 15. On June 27, 2025, Defendant Chuck Gray filed his opposition to Plaintiff's motion. Def.'s Opp'n, ECF No. 65. In his opposition, Defendant asserts a compelling interest in preventing noncitizens from voting,

*id.* at 18, and in requiring proof of citizenship to build confidence in the electoral system, *id.* at 25. Plaintiff concedes that "safeguarding voter confidence" is a "legitimate interest" of the State but argues that this interest is not advanced through operation of HB 156. Pl.'s Mem. in Supp. of Pl.'s Mot. for Prelim. Inj. at 17, ECF No. 16.

On June 12, the Court set a deadline of July 9, 2025 for Plaintiff to file its reply. Plaintiff filed its reply early, on June 30, 2025. ECF No. 73.

**II.     Argument**

    A.     <u>Legal Standards</u>

The Constitution grants States the authority to pass legislation regulating the "Times, Places, and Manner of holding Elections." *Fish v. Schwab*, 957 F.3d 1105, 1122 (10th Cir. 2020) (citing *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting U.S. CONST. art. 1, § 4, cl.1)). States are further empowered to determine the qualifications of voters in federal elections. U.S. CONST. art. I, § 2, cl. 1. To this end, both federal and Wyoming state law prohibit non-citizen voting outright. 18 U.S.C. §§ 611, 1015; Wyo. Code § 22-1-102(a)(xxvi). The Help America Vote Act of 2002 requires registrants to attest to their citizenship when registering to vote by mail. 52 U.S.C. § 21083(b)(4). The National Voter Registration Act of 1993 similarly requires attestation of citizenship status when registering at State motor vehicle offices. 52 U.S.C. § 20504(c)(2)(C). And most recently, on March 25, 2025, President Trump signed Executive Order 14248 entitled, "Preserving and Protecting the Integrity of American Elections" ("EO") to ensure that elections are being held in compliance with federal laws that guard against unlawful voting. 90 Fed. Reg. 14005 (Mar. 25, 2025). "Free, fair, and honest elections unmarred by fraud, errors, or suspicion are fundamental to maintaining our constitutional Republic." *Id.* §1. Pursuant to this EO, the

Attorney General has been instructed to prioritize enforcement of federal election laws to ensure election integrity. *Id.*

Reasonable burdens on access to the ballot box are expected when States regulate elections. *See, e.g.*, *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997) ("States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder."). "Usual burdens," like verifying one's identity, are necessarily required to cast a ballot. *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 669 (2021) (quoting *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 198 (2008)). Generally speaking, "evenhanded restrictions that protect the integrity and reliability of the electoral process itself" satisfy constitutional standards. *Crawford*, 553 U.S. at 189–90 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). A State's "important regulatory interests are [] sufficient to justify reasonable, nondiscriminatory restrictions." *Anderson*, 460 U.S. at 788.

To examine claims that a state law goes too far and unconstitutionally burdens Fourteenth Amendment rights to access the ballot, federal courts use the *Anderson-Burdick* balancing test. *See Fish v. Schwab*, 957 F.3d 1105, 1127 (10th Cir. 2020); *Crawford*, 553 U.S. 181 (2008); *see also Burdick v. Takushi*, 504 U.S. 428 (1992); *Anderson*, 460 U.S. 780. The appropriate test is to "weigh the asserted injury to the right to vote against the precise interests put forward by the State as justifications for the burden imposed by its rule." *Fish*, 957 F.3d at 1127 (quoting *Crawford*, 553 U.S. at 190); *see also ACLU of N.M. v. Santillanes*, 546 F.3d 1313, 1320 (10th Cir. 2008). This is not a litmus test with bright line boundaries. *See, e.g.*, *Anderson*, 460 U.S. at 789. This Statement addresses the question of whether Wyoming's interests are legitimate and submits that they are.

B.  Preventing Voter Fraud and Safeguarding Voter Confidence are Legitimate State Interests and Requiring Documentary Proof of Citizenship is One Valid Method for the State to Achieve its Interests

Wyoming has a legitimate interest in preventing voter fraud. *Crawford*, 553 U.S. at 200 (recognizing the State's "broad interests in protecting election integrity"); *Brnovich*, 594 U.S. at 672 ("One strong and entirely legitimate state interest is the prevention of fraud."); *VoteAmerica v. Schwab*, 576 F.Supp.3d 862, 890 (D. Kan. 2021) (holding that "eliminating voter fraud" is a "clearly legitimate purpose[]" of a state law); *DCCC v. Ziriax*, 487 F.Supp.3d 1207, 1226 (N.D. Ok. 2020) (holding that "concerns about voter fraud . . . are legitimate and weighty"). In *Crawford*, the Supreme Court upheld a state photo identification requirement for in person voting, recognizing that "[t]here is no question about the legitimacy or importance of the State's interest in counting only the votes of eligible voters," so as to, in part, ensure "orderly administration and accurate recordkeeping" to identify all voters participating in the election. 553 U.S. at 188–89, 196.

The Supreme Court reaffirmed this holding in *Brnovich*. 594 U.S. at 685–86. It held that fraudulently cast votes can "affect the outcome of a close election" and "dilute the right of citizens to cast ballots that carry appropriate weight." *Id.* at 672. This holding was supported by the findings of the bipartisan Commission on Federal Election Reform. *Id.* at 685. The Commission found that States should act to "reduce the risks of fraud" and offered a variety of measures to achieve that end. *Id.* Although States may adopt different statutory schemes to root out fraud, as contemplated in the Elections Clause and the Commission's findings, the "propriety of doing so is perfectly clear." *Fish*, 957 F.3d at 1133 (quoting *Crawford*, 553 U.S. at 196); *see also* U.S. CONST. art. 1, § 4, cl.1. A State has a legitimate interest in preventing voter fraud regardless of whether "[t]he record contains [any] evidence of . . . fraud actually occurring . . . at any time in [state] history" or whether existing laws (including those that impose criminal penalties) already adequately protect

6

against the risk of fraud. *Crawford*, 553 U.S. at 194. Indeed, requiring a State to prove the existence of certain conditions prior to imposing "reasonable restrictions on ballot access" would hinder its ability to proactively manage its voting process. *Munro v. Socialist Workers Party*, 479 U.S. 189, 195–96 (1986) (holding that a State "should be permitted to respond to potential deficiencies in the electoral process with foresight rather than reactively, provided that the response is reasonable and does not significantly impinge on constitutionally protected rights").

Further, voting requires "some effort and compliance with some rules," so any system that furnishes an equal opportunity to vote necessarily includes the "usual burdens of voting" that are especially acceptable in the context of the State enforcing its important interests. *Brnovich*, 594 U.S. at 669 (citing *Crawford*, 553 U.S. at 198) (holding in Section 2 claims brought under the Voting Rights Act of 1965, 52 U.S.C. § 10301 *et seq.*, that the first "guidepost" should be the burden imposed by voting rules, and the fourth "guidepost" concerns the opportunities provided by a State's entire system of voting). Almost every voting rule will impose *some* burden, but slight inconveniences, including the processes necessary to acquire photo identification to register or vote, do not delegitimize the State's interest in preventing fraud or seriously hinder the ability to vote. *Id.*; *Crawford*, 553 U.S. at 198.

Wyoming also has a legitimate interest in safeguarding voter confidence in the electoral process. *See, e.g.*, *Crawford*, 553 U.S. at 181 (recognizing the State's interest in protecting public confidence in elections separate and apart from its interest in preventing illegal voting); *Brnovich*, 594 U.S. at 685 (recognizing the importance of building "voter confidence"); *Fish,* 957 F.3d at 1133 (holding that "Kansas has a legitimate interest in safeguarding voter confidence"). Laws designed to prevent voter fraud enhance "public confidence in the integrity of the electoral process[,]" which in turn "encourages citizen participation in the democratic process." *Crawford*, 553 U.S. at 197. And alleged fraud, even if unproven, "drives honest citizens out of the democratic

process and breeds distrust of our government." *Doe v. Reed*, 561 U.S. 186, 197 (2010) (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)). A State's interests wax and wane at different points in the voting process. *Munro*, 479 U.S. at 196. The State may validly assert an interest in safeguarding voter confidence at the voter registration stage. *Cf. id.* In short, this Court should maintain the long-held position that preventing voter fraud and safeguarding voter confidence are legitimate state interests.

Additionally, requiring documentary proof of citizenship to register to vote is a valid method for a State to achieve its interests in preventing fraud and safeguarding voter confidence in elections. Both federal and Wyoming state law prohibit non-citizen voting outright. 18 U.S.C. §§ 611, 1015; Wyo. Code § 22-1-102(a)(xxvi). Wyoming's documentary proof of citizenship law is a mechanism to enforce laws that prohibit non-citizen voting and ensure that only eligible voters cast ballots. In this case, Wyoming enacted HB 156 to address a possible vulnerability in its registration system. In Wyoming, voters may register to vote on election day, and some county election officials cannot, or do not, verify citizenship status until after election day. Def.'s Opp'n at 2-3. This could, potentially, enable non-citizens to use same-day registration to register and vote in violation of state or federal law, and their ballots cannot later be removed from the vote totals. *Id.* Laws, like this one, that are designed to deter ineligible voters can improve voter confidence in elections. *Crawford*, 553 U.S. at 197 (finding that promoting public confidence in elections "encourages citizen participation in the democratic process").

Congress similarly passed the Help America Vote Act, 52 U.S.C. §§ 20901-21145, and the National Voter Registration Act, 52 U.S.C. §§ 20501-20511, which set identification requirements for certain voter registration applications, and indicate that "Congress believes that photo identification is one effective method of establishing a voter's qualification to vote and that the integrity of elections is enhanced through improved technology." *Crawford*, 553 U.S. at 193. The

8

Wyoming law at issue in this case reflects both federal and state level statutory schemes to prevent fraud and safeguard voter confidence.

Importantly, States have broad constitutional authority to regulate elections in the absence of congressional override. Outside of the restrictions of the Supremacy Clause, the States retain comprehensive authority to run elections pursuant to the Elections Clause. *See* U.S. CONST. art. 1, § 4, cl.1; art. I, § 2, cl. 1. Because of this constitutional structure, States have "broad powers to determine the conditions under which the right of suffrage may be exercised." *Shelby County v. Holder*, 570 U.S. 529, 543 (2013) (quoting *Carrington v. Rash*, 380 U.S. 89, 91 (1965)). Generally, a State's "important regulatory interests are [] sufficient to justify reasonable, nondiscriminatory restrictions." *Anderson*, 460 U.S. at 788. In this case, the Court should conclude that requiring documentary proof of citizenship, like the voter ID requirement upheld in *Crawford*, is a valid method to achieve the state's legitimate interests. 553 U.S. at 203.

### III.    Conclusion

The United States respectfully requests the Court consider this Statement of Interest and welcomes the opportunity to provide further assistance at the Court's request.

Date: July 3, 2025

Respectfully submitted,

| | |
|---|---|
| STEPHANIE I. SPRECHER<br>Acting United States Attorney | MICHAEL E. GATES<br>Deputy Assistant Attorney General |
| | MAUREEN RIORDAN<br>Acting Chief, Voting Section |
| By:  */s/ C. Levi Martin*<br>         C. LEVI MARTIN<br>         Assistant United States Attorney | */s/ Timothy F. Mellett*<br>TIMOTHY F. MELLETT<br>ARIELLE R. L. REID<br>KEVIN P. MUENCH<br>Trial Attorneys<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue 4CON<br>Washington, DC 20530<br>Telephone: 202-307-2767<br>Timothy.F.Mellett@usdoj.gov |