GABRIEL R. CANAAN
D.C. Bar No. 90025172
**Immigration Reform Law Institute**
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
(202) 232-5590
gcanaan@irli.org
Counsel for *Amicus Curiae*
Immigration Reform Law Institute

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| EQUALITY STATE POLICY CENTER,<br><br>Plaintiff,<br><br>v.<br><br>CHUCK GRAY, in his official capacity as Wyoming Secretary of State, *et al.,*<br><br>Defendants. | Case No.: 1:25-cv-00117-SWS |

MEMORANDUM OF *AMICUS CURIAE* IMMIGRATION REFORM LAW INSTITUTE IN SUPPORT OF DEFENDANTS AND IN OPPOSITION TO INJUNCTIVE RELIEF

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii
INTEREST OF AMICUS CURIAE ........................................................................................ 1
INTRODUCTION .................................................................................................................. 1
SUMMARY OF ARGUMENT ............................................................................................... 3
ARGUMENT ........................................................................................................................... 3
   I.  THE CONSTITUTION ENTRUSTS STATES WITH THE AUTHORITY TO ENFORCE VOTER QUALIFICATIONS, INCLUDING PROOF OF CITIZENSHIP . 3
   II.  WYOMING HAS A COMPELLING INTEREST IN PREVENTING NONCITIZEN VOTING. ......................................................................................................................... 6
   III.  PLAINTIFFS ARE UNLIKELY TO SUCCEED ON THE MERITS AND THE BALANCE OF EQUITIES WEIGHS AGAINST THEM ................................................. 9
CONCLUSION ..................................................................................................................... 15
CERTIFICATE OF COMPLIANCE.................................................................................... 16

# TABLE OF AUTHORITIES

**CASES**

*ACLU of N.M. v. Santillanes,*
   546 F.3d 1313 (10th Cir. 2008) ............................................................................................... 8

*Anderson v. Celebrezze,*
   460 U.S. 780 (1983) ................................................................................................................. 9

*Arizona v. Inter Tribal Council of Ariz.,*
   570 U.S. 1 (2013) ..................................................................................................................... 5

*Buckley v. Am. Constitutional Law Found*
   525 U.S. 182 (1999) ................................................................................................................. 4

*Burdick v. Takushi,*
   504 U.S. 428 (1992) ............................................................................................................. 3, 9

*Cabell v. Chavez-Salido,*
   454 U.S. 432 (1982) ................................................................................................................. 6

*Colo. Taxpayers Union, Inc. v. Romer,*
   963 F.2d 1394, 1397 (10th Cir. 1992) ................................................................................... 13

*Crawford v. Marion Cnty. Election Bd.,*
   553 U.S. 181 (2008) ..........................................................................................6, 8, 11, 12, 15

*Fish v. Schwab,*
   309 F. Supp. 3d 1048 (D. Kan. 2018) ...................................................................................... 8

*Fish v. Schwab,*
   957 F.3d 1105 (10th Cir. 2020) ...................................................................................... 8, 9, 14

*Foley v. Connelie,*
   435 U.S. 291 (1978) ......................................................................................................... 3, 6, 7

*Food & Drug Admin. v. Alliance for Hippocratic Medicine,*
   602 U.S. 367 (2024) ............................................................................................................... 14

*Havens Realty Corp. v. Coleman,*
   455 U.S. 363 (1982) ............................................................................................................... 13

*Husted v. A. Philip Randolph Inst.,*
   584 U.S. 756 (2018) ....................................................................................................... 5, 6, 12

*Illinois Bd. of Elections v. Socialist Workers Party,*
   440 U.S. 173 (1979) ................................................................................................................. 3

*Oregon v. Mitchell,*
   400 U.S. 112 (1970) ................................................................................................................. 4

*Purcell v. Gonzalez,*
   549 U.S. 1 (2006) ..................................................................................................................... 6

*Storer v. Brown,*
   415 U.S. 724 (1974) ................................................................................................................. 3

*Washington v. Davis,*
  426 U.S. 229 (1976) ................................................................................................... 3
*Wesberry v. Sanders,*
  376 U.S. 1 (1964) ....................................................................................................... 3
*Yick Wo v. Hopkins,*
  118 U.S. 356 (1886) ................................................................................................... 3

## CONSTITUTION & STATUTES

21 U.S.C. § 830(e)(1)(A) ................................................................................................. 9
49 C.F.R. §§ 1560.3, 1540.107 ....................................................................................... 9
52 U.S.C. § 20503(b)(3) .................................................................................................. 5
H.B. 156, 68th Leg., Gen. Sess (2025) ........................................................................... 2
S.F. 33, 68th Leg., Gen. Sess. (Wyo. 2025) ................................................................... 2
U.S. Const. art. I, § 2, cl. 1 .............................................................................................. 3
U.S. Const., art. II, § 1, cl. 4 ........................................................................................... 4
Wyo. Stat. Ann. § 22-1-102(a)(xxvi) ............................................................................... 2
Wyo. Stat. Ann. § 22-2-121(a) ...................................................................................... 10
Wyo. Stat. Ann. § 22-3-104(b) ...................................................................................... 10
Wyo. Stat. Ann. § 22-3-104(g) ...................................................................................... 11
Wyo. Stat. Ann. § 31-7-111(a) ........................................................................................ 9
Wyo. Stat. Ann. § 31-7-111(a) ...................................................................................... 10

## RULES

D. Wyo. Civ. R. 83.4(b) ................................................................................................ 11

**INTEREST OF *AMICUS CURIAE*[1]**

*Amicus curiae* Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *Trump v. Hawaii*, 585 U.S. 667 (2018); *United States v. Texas*, 599 U.S. 670 (2023); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't of Homeland Sec.*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016).

**INTRODUCTION**

The Constitution assigns to the States the authority to establish and enforce voter qualifications in federal elections. Wyoming, like every State, has a compelling interest in protecting the integrity of its elections and maintaining public confidence in their legitimacy, an interest that has become more urgent in light of the mass entry of over 10 million illegal aliens[2] into the United States from 2021 to 2024. This crisis of illegal entry

---

[1]   No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

[2]   *See* Migration Policy Institute, *Biden's Mixed Immigration Legacy* (Dec. 6, 2024), https://www.migrationpolicy.org/article/biden-immigration-legacy. Report by the House Committee on Homeland Security finding that CBP recorded 10.8 million encounters nationwide from 2021 to October 2024. U.S. House Committee on Homeland Security, *September 2024 Border Report* (Sept. 2024), https://www.migrationpolicy.org/article/biden-immigration-legacy. *See also* What Democrats Must Learn from Biden's Disastrous Immigration Record, Vox (Jan. 17, 2025) https://www.vox.com/politics/395339/biden-border-immigration-record-legacy. Estimates of the total number of illegal aliens range from 11 million to over 18 million. *See* Jeffrey S. Passel & D'Vera Cohn, *What We Know About Unauthorized Immigrants Living in the U.S.*, Pew Rsch. Ctr. (July 22, 2024), https://www.pewresearch.org/short-reads/2024/07/22/what-we-know-about-unauthorized-immigrants-living-in-the-us/; *How Many Illegal Aliens Are in the*

1

underscores the need to ensure that only U.S. citizens cast ballots. Noncitizens and illegal aliens, if they believe they are unlikely to face consequences, have obvious incentives to vote unlawfully, such as opening up access to public benefits and the election of officials who favor lenient immigration enforcement.

To protect the integrity of its elections, Wyoming enacted House Bill 156, requiring that voters be bona fide residents of the State for at least 30 days before an election. *See* H.B. 156, 68th Leg., Gen. Sess. § 1 (2025) (amending Wyo. Stat. Ann. § 22-1-102(a)(xxvi)). Applicants must submit documentary proof of residence, as defined by forthcoming rules from the Secretary of State. *Id.* (amending §§ 22-1-102(a)(lv), 22-3-103(a)(ix)). The registration oath now includes a 30-day residency affirmation. *Id.* (amending § 22-3-103(b)).

At issue here is a provision directing the clerk to prohibit registration if an applicant's identification or proof of residence indicates that the applicant is not a citizen, unless the form is accompanied by acceptable proof of U.S. citizenship. *Id.* (amending § 22-3-102(a)(i)). This provision applies to both in-person and absentee registration. *See id.* (amending §§ 22-3-117(a), 22-3-118(a)(ii)). The provision reads:

> A person may register to vote not less than fourteen (14) days before an election, at any election specified in Wyo. Stat. Ann. § 22-2-101(a)(i)–(viii) or as provided by Wyo. Stat. Ann. § 22-3-117, if the person meets the following qualifications: […]
> (i) The person is a citizen of the United States. The county clerk shall not register a person if the identification or proof of residence presented indicates that the person is not a United States citizen, unless the person also presents proof of citizenship as specified by rule of the secretary of state. The rule shall identify the documents or other proof that establish citizenship.

---

*United States?* Federation for American Immigration Reform (Mar. 2025), https://www.fairus.org/issue/how-many-illegal-aliens-are-united-states-2025-update.

Wyo. Stat. Ann. § 22-3-102(a) (2025) (as amended by H.B. 156§ 22-3-102). As required by Wyoming Senate File 33, the identification of any individual who fails to produce documentary proof of citizenship ("DPOC") when applying for a Wyoming driver's license or ID card will be marked as "Not U.S. Citizen". S.F. 33, 68th Leg., Gen. Sess. (Wyo. 2025).

## SUMMARY OF THE ARGUMENT

States—not Congress—have authority over setting and regulating voter qualifications. HB 156 imposes only modest and nondiscriminatory burdens on voters and should be upheld under the *Anderson-Burdick* balancing test, as it does not unconstitutionally burden Plaintiff's members' right to vote when weighed against Wyoming's compelling interest in preventing non-citizen voting. Because Plaintiff's facial challenge to HB 156 cannot succeed on the merits, and because the balance of equities weighs against injunctive relief, their motion for a preliminary injunction should be denied.

## ARGUMENT

**I. THE CONSTITUTION ENTRUSTS STATES WITH THE AUTHORITY TO DETERMINE VOTER QUALIFICATIONS, INCLUDING PROOF OF CITIZENSHIP**

The right to vote has long been recognized as a fundamental right of U.S. citizens. *See, e.g., Illinois Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979) ("[V]oting is of the most fundamental significance under our constitutional structure"); *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) (explaining that "[o]ther rights, even the most basic, are illusory if the right to vote is undermined."); *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886) (describing the right to vote as "preservative of all rights."); *see also Foley v. Connelie*, 435 U.S. 291, 296 (1978) (recognizing the "right[] of the people to be governed by their citizen peers"). The fundamental nature of the right to vote requires rules and regulations to ensure fairness and

3

maintain faith in elections. *See Storer v. Brown*, 415 U.S. 724, 730 (1974) (explaining that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes."); *Buckley v. Am. Constitutional Law Found.*, 525 U.S. 182, 206 (1999) ("States, of course, must regulate their elections to ensure that they are conducted in a fair and orderly fashion."); *Crawford v. Marion Cnty. Election. Bd.*, 553 U.S. 181, 189 (2008) (explaining that "public confidence in the integrity of the electoral process . . . encourages citizen participation in the democratic process.").

  The Constitution vests the authority to set voter qualifications and rules for the conduct of elections primarily in the States. Article I of the Constitution contains the guidelines for congressional elections, providing that "[t]he House of Representatives shall be composed of Members chosen every second Year by the People of the several States, and the Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature." U.S. Const. art. I, § 2, cl. 1 (the "Qualifications Clause"). Article I also authorizes State legislatures to determine "[t]he times, places and manner of holding elections for Senators and Representatives." U.S. Const., art. I, § 4.

  The authority over presidential elections is also primarily assigned to the States. Article II provides that the States "shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in Congress: but no Senator or Representative . . . shall be appointed an Elector." U.S. Const., art. II, § 1, cl. 4 (the "Presidential Electors Clause"). The Constitution only authorizes Congress to determine "the Time of chusing the Electors, and the Day on which they shall give their Votes." *Id.* (emphasis added). Congress therefore has no say in the "manner" or

"qualifications" for presidential elections. *See Oregon v. Mitchell*, 400 U.S. 112, 210 (1970) (Harlan, J., concurring in part and dissenting in part) ("It is difficult to see how words could be clearer in stating what Congress can control and what it cannot control. Surely nothing in these provisions lends itself to the view that voting qualifications in federal elections are to be set by Congress.").

Because Wyoming is exempt from the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20503(b)(3), Plaintiff does not bring either federal-form or list-maintenance claims under that statute. PI Mot. at 7. Nor do *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013), or *Husted v. A. Philip Randolph Institute,* 584 U.S. 756 (2018), dictate the outcome here. Both decisions turned on whether the NVRA pre-empts state voting laws, an issue that is irrelevant given Wyoming's statutory exemption. However, those cases confirm the underlying constitutional principle that the States, not Congress, determine voter qualifications and may enact reasonable measures—such as proof-of-citizenship requirements—to verify them. In *Inter Tribal* the Court struck down Arizona's rule because it was preempted by the NVRA, but Justice Scalia's majority opinion did not upend the principle that States retain the power to set voter qualifications absent an intervening act of Congress. 570 U.S. at 7-8; 16 ("the Elections Clause empowers Congress to regulate *how* federal elections are held, but not *who* may vote in them.")(emphasis in original). The majority also affirmed that States' constitutional authority to establish qualifications for voting includes citizenship. *Id*. at 16.  *Husted,* similarly, held that "[t]he Constitution gives States the authority to set the qualifications for voting in congressional elections … as well as the authority to set the 'Times, Places and Manner' of conducting those elections in the absence of contrary congressional direction." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 768 (2018). In his concurrence in *Husted*, Justice Thomas argued that any

5

interpretation of federal election law that precludes States from enforcing their own voter qualifications "would seriously interfere with the States' constitutional authority to set and enforce voter qualifications." *Husted*, 584 U.S. 756, 781 (2018) (Thomas, J. concurring). Justice Thomas also stressed that Congress lacks the power "dictate what evidence a State may consider in deciding whether those qualifications have been met." *Id.*

Wyoming's HB 156 falls within the powers granted to the States identified above. The law does not impose new qualifications or procedural requirements but authorizes state officials to *verify* the constitutional requirement of citizenship if a registrant's identification indicates that he or she is a noncitizen. It therefore exercises Wyoming's core constitutional function of preserving the integrity of its elections by ensuring that only eligible citizens vote.

## II.   WYOMING HAS A COMPELLING INTEREST IN PREVENTING NONCITIZEN VOTING.

### a. *Noncitizen voting dilutes Wyoming citizens' votes*.

All States, including Wyoming, require voters to be U.S. citizens to vote in federal elections, and all States "[have] a compelling interest in preserving the integrity of the election process." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (quoting *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 231 (1989)). Accordingly, Wyoming has a compelling interest in preventing noncitizens from voting in its elections because noncitizen votes dilute each vote cast by Wyoming citizens. The right to vote is not merely procedural—it is the defining act of self-government. As the Supreme Court has recognized, "[t]he exclusion of aliens from basic governmental processes is not a deficiency in the democratic system but a necessary consequence of the community's process of political self-definition." *Cabell v. Chavez-Salido*, 454 U.S. 432, 439–40 (1982). Aliens "are by definition those outside of this community." *Id.*

6

HB 156 is a direct exercise of this principle of citizen self-government. It ensures that the franchise remains confined to the body politic of American citizens. As the Court held in *Foley v. Connelie*, "[t]he act of becoming a citizen is more than a ritual … [i]t signifies entrance into the polity and the entitlement to participate in democratic decision-making." 435 U.S. 291, 295-96 (1978). Accordingly, "[a] State may deny aliens the right to vote, or to run for elective office, for these lie at the heart of our political institutions." *Id.* at 296. A State's obligation to preserve the integrity of the citizen electorate includes the authority to confirm that applicants meet constitutional qualifications. Wyoming's HB 156 achieves this by applying a modest verification procedure when credible information suggests a registrant is not a citizen.

      b. *Wyoming may take preventative measures to protect election integrity absent proof of voting fraud.*

HB 156's documentary proof of citizenship requirement provides election officials with a reliable method for determining whether a prospective voter is a citizen by requiring them to submit specific forms of identification—such as a birth certificate, passport, or naturalization documents. H.B. 156, 68th Leg., Gen. Sess. (Wyo. 2025) § 22-3-102(a)(i). If a voter provides a birth certificate from another State or a federal identification, Wyoming officials can verify its authenticity either with the issuing State's vital records department or with federal databases to confirm citizenship status. 6 C.F.R. § 37.13(b)(3) (2025).

Voter fraud and noncitizen voting present a category of harm that is particularly difficult to remedy retrospectively. Once a ballot is cast, it becomes anonymous and irretrievable, with no way of proving who cast it. In this sense voter fraud is like other legally recognized harms, such as environmental contamination or data breaches, that require preventative safeguards precisely because of the challenges of post-hoc detection or correction. In arguing that Wyoming has only "purely hypothetical" concerns over noncitizen voting, Complaint, ¶¶ 216-219, Plaintiff misses

7

the point. The Supreme Court has held that States need not wait for actual fraud to occur within their borders before acting to prevent it. In *Crawford,* the Court upheld Indiana's photo identification law even absent any documented instances of in-person voter impersonation. Despite "[t]he record contain[ing] no evidence of any such fraud actually occurring in Indiana," the Court concluded "flagrant examples of such fraud in other parts of the country … demonstrate that not only is the risk of voter fraud real but that it could affect the outcome of a close election." 553 U.S. 181, 194, 196 (2008) (plurality op.). The Tenth Circuit applied this principle in *ACLU of N.M. v. Santillanes*, where it relied on *Crawford* in reversing an injunction against Albuquerque's photo ID law and held that "[p]revention of voter fraud and voting impersonation … are sufficient justifications" for voter ID laws even absent specific local incidents of fraud. 546 F.3d 1313, 1324 (10th Cir. 2008) (citing *Crawford*, 553 U.S. at 189, 197 (2008)).

Plaintiff relies heavily on the Tenth Circuit's decision in *Fish v. Schwab ("Fish II")*, 957 F.3d 1105 (10th Cir. 2020), to suggest that Wyoming's HB 156 should be enjoined. PI Motion at 9. But *Fish II* is distinguishable. In that case, the Tenth Circuit struck down Kansas's DPOC law (the "Safe and Fair Elections Act" of 2011) after affirming the district court's conclusion that the law rejected over 31,000 applications without those applicants' having an opportunity to remedy defects in their registration. *Id.* at 1130. There are relevant differences between the Kansas law and HB 156, however: Kansas's SAFE-Act DPOC regime places an applicant in "suspense" until documentary proof of citizenship is produced; if the applicant fails to file that proof within ninety days the county must cancel the application and require a brand-new one. *Fish v. Kobach ("Fish I")*, 309 F. Supp. 3d 1048 (D. Kan. 2018). An applicant who remained on the suspense or cancellation list had no opportunity to cure the matter on or after election day. *Id.* at 1109

8

(finding that such a voter "does not have the option to fill out a provisional ballot, produce DPOC after the election, and have their ballot counted"). The last moment to cure under the Kansas law was midnight on the day *before* the polls opened. *Id.* at 1063.

In contrast, HB 156 incorporates a post-submission cure period: Wyoming law allows applicants whose documents are initially deficient to correct or supplement proof of citizenship within the statutory grace period. Wyo. Stat. Ann. § 22-3-104(g) (2024). Indeed, unlike in *Fish II*, where Kansas did not allow the casting of a provisional ballot, 957 F.3d at 1129, Wyoming's HB 156 permits applicants who lack DPOC to cast provisional ballots. Wyo. Stat. Ann. § 22-3-104(g). Accordingly, *Fish II* does not control the outcome here, and the mere fact that some prospective Wyoming voters may be unwilling to obtain DPOC should not be taken as an indication that HB 156 is unduly burdensome.

### III. PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS AND THE BALANCE OF EQUITIES WEIGHS AGAINST INJUNCTIVE RELIEF.

   a. *HB 156 does not constitute a severe burden.*

To succeed in a motion for a preliminary injunction, Plaintiffs must demonstrate that they will suffer irreparable harm in the absence of immediate relief. Plaintiffs cannot meet this burden because they present no evidence that HB 156 constitutes a "severe" burden that causes them irreparable harm under the *Anderson-Burdick* test and that the law is therefore subject to strict scrutiny. Under the *Anderson–Burdick* test, courts first measure the burden's severity under *Anderson*'s balancing framework and then apply the scrutiny level prescribed in *Burdick*. Severe burdens trigger strict scrutiny; reasonable, nondiscriminatory regulations survive if they are justified by important state interests and tailored appropriately *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Burdick v. Takushi*, 504 U.S. 428, 433-34 (1992). The burden imposed by HB 156 is "reasonable [and] nondiscriminatory" *Burdick*, 504 U.S.

9

at 434. Only if a registrant's ID indicates that he is not a citizen does the law require him to produce one of the following DPOC: (a) United States Passport; (b) Certificate of United States Citizenship; (c) Certificate of Naturalization; (d) United States Military Draft Record or Selective Service Registration Acknowledgement card; (e) Certificate of Birth Abroad issued by the Department of State; or (f) Original or certified copy of birth certificate bearing an official seal. Wyo. Stat. Ann. § 22-1-102(a).

Plaintiff argues that HB 156 demands proof of citizenship based on documents that "have nothing to do with citizenship," PI Mot. at 20, but this a misleading claim: while not every ID required necessarily proves citizenship, each can indicate that a registrant is not a citizen—either directly or indirectly. Wyoming driver's licenses and state identification cards are issued only after the applicant produces primary proof of identity and lawful status, typically a U.S. birth certificate, passport, or naturalization certificate. Wyo. Stat. Ann. § 31-7-111(a) (2024); *see also* Wyo. Dep't of Transp., Driver License, WYDOT, "Applying for a Wyoming Driver License" https://www.dot.state.wy.us/home/driver_license_records/driver-license.html (last visited June 23, 2025). When a registrant supplies a passport, naturalization certificate, or certified birth record, the clerk records serial numbers that the Secretary of State may confirm through the Systematic Alien Verification for Entitlements ("SAVE") program and the statutorily-mandated monthly cross-match of voter rolls with driver-license files that disclose any alien identification number. *See* U.S. Citizenship & Immigration Services, *USCIS Deploys Common Sense Tools to Verify Voters*, News Release (May 22, 2025), https://www.uscis.gov/newsroom/news-releases/uscis-deploys-common-sense-tools-to-verify-voters; Wyo. Stat. Ann. §§ 22-2-121(a)–(c), 31-7-111(a) (2024). A Wyoming license

obtained with a green card likewise flags a non-citizen status in the underlying DMV record, allowing officials to investigate further.

Presenting photo ID is already mandatory for a host of regulated activities in Wyoming: purchasing medications containing pseudoephedrine such as Sudafed, 21 U.S.C. § 830(e)(1)(A); Wyo. Stat. Ann. § 35-7-1059; boarding commercial flights under Transportation Security Administration regulations, Transportation Security Administration, *Acceptable Identification at the TSA Checkpoint*, TRANSP. SEC. ADMIN., https://www.tsa.gov/travel/security-screening/identification; and entering federal courthouses, D. Wyo. Civ. R. 83.4(b) (requiring any person on the premises of this Court to present government-issued ID on request). The cost of obtaining DPOC is also within the realm of the burdens permitted under *Crawford.* 553 U.S. at 198 ("[T]he inconvenience of making a trip to the [state motor vehicle department], gathering the required documents, and posing for a photograph surely does not qualify as a substantial burden on the right to vote.").

Plaintiff's argument that the law's DPOC requirements will disenfranchise voters who have been removed from the registry is also unfounded. PI Mot. at 13. A voter who learns at the polls that he has been removed may reregister simply by resubmitting the documentary proof of citizenship—passport, birth certificate, naturalization certificate, or Real-ID driver's license—that he already possessed when he first registered, together with the photo ID Wyoming law requires to receive a ballot. Wyo. Sec'y of State, *Wyoming's Voter ID Law*, https://sos.wyo.gov/Elections/VoterID/ (last visited June 24, 2025). Wyoming election law grants voters who lack proof of ID a provisional ballot and the chance to present ID until close of business of the day *after* the election. Wyo. Stat. Ann.

11

§ 22-3-104(g).

Plaintiff's argument that some voters might not be able to obtain documents in time is an indirect challenge to the structure of election timelines themselves, not to the specific procedures of HB 156. Plaintiff cannot demand that the State decline to maintain its voter registry merely because a voter fails to keep his or her registration current and then waits until the final day permitted by the law to obtain DPOC and register to vote. Maintaining voter eligibility documentation is not a burden that outweighs Wyoming's compelling interest in removing nonregistered voters from its voter rolls.

The only individuals for whom this step would be substantially burdensome are those who lack, and cannot lawfully obtain, DPOC—that is, non-citizens. Voters may re-register and vote in future elections but the harm to the State and the public from failing to enforce constitutional qualifications is not remediable. A non-citizen's ballot cannot be retrieved once cast, and election integrity cannot be retroactively restored. *See Husted,* 584 U.S. at 760, (noting that in 2012, "one in eight" voter registrations in the United States are "either invalid or significantly inaccurate.").

    b. *HB 156 is nondiscriminatory and facially neutral.*

Plaintiff's disparate impact claim also fails, as HB 156 applies uniformly and is facially neutral; it only allows election officials to deny a registration if the person's presented identification "contains any indication that the person is not a citizen of the United States." Wyo. Stat. Ann. § 22-3-102(i). Disparate impact alone, without a discriminatory purpose or actual exclusion from voting, does not establish a constitutional violation so long as the law in question is neutral. *See Washington v. Davis*, 426 U.S. 229, 242 (1976) ("[W]e have not held that a law, neutral on its face and serving ends otherwise within the power of

12

government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another."). HB 156 does not authorize or encourage racial profiling. It directs clerks to act only when documents explicitly indicate that the applicant is not a citizen—such as the lawful presence notation on certain federal or state IDs. Under Wy. Stat. Ann. 22-15-101, a person's right to vote may be challenged only if he or she (i) is not a qualified elector; (ii) is not entitled to vote in the precinct; (iii) is not on a poll list and cannot meet the requirements to register at the polls; (iv) is not the person he represents himself to be; (v) has already voted; or (vi) is voting in person and fails to present acceptable identification immediately before voting at the polling place or absentee polling place. These criteria are all race-neutral. Absent any evidence of discriminatory intent in Wyoming's voter laws, Plaintiffs rely on mere insinuation. PI Mot. at 8.

  c. *Any harm that could be caused by HB 156 is not irreparable*

  Plaintiff cannot substantiate its claim of irreparable harm. First, it is dubious that Plaintiff can establish organizational standing, let alone irreparable harm. Merely expending resources on assisting its members in obtaining DPOC rather than on its previously planned expenditures, PI Mot. at 22, is insufficient to confer standing. In *Havens Realty Corp. v. Coleman,* the Supreme Court held that direct organizational injury, for standing purposes, is cognizable if (a) the organization diverts organizational resources to identify or counteract an allegedly unlawful action, or (b) the law frustrates the organization's mission. 455 U.S. 363, 379 (1982). Plaintiffs allege that they will have to divert resources away from pre-planned programs towards voter-education materials in response to HB 156, PI Mot. at 22, but provide no support for this allegation beyond its assertion. It is thus a speculative harm of the kind previously dismissed by this Circuit for standing purposes. *Colo. Taxpayers*

*Union, Inc. v. Romer*, 963 F.2d 1394, 1397 (10th Cir. 1992) (describing as "pure conjecture" the plaintiffs' assumption that the defendant-governor's allegedly unlawful activity caused them to "drain their resources."). As to the second prong, the Supreme Court recently made clear that resource diversion establishes injury only when the challenged measure "perceptibly impair[s]" an organization's core programs by imposing an affirmative "impediment" to their performance. *Food & Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 394–95 (2024). Educating the public about HB 156's DPOC requirement is well-within Plaintiff's mission, which it describes as "helping qualified Wyomingites register to vote and successfully participate in Wyoming elections." PI Mot. at 21.

The alleged harm to Plaintiff's members or those it helps is also not irreparable because HB 156 does not prevent registration or voting by any eligible voter; it merely provides a mechanism for verifying the veracity of an applicant's attestation of being a United States citizen. Also, unlike in *Fish II*, this case arises at the preliminary injunction stage. The plaintiffs in *Fish II* prevailed only after a full trial on the merits, where the court found that the State law prevented over 30,000 eligible applicants from registering, where Kansas failed to substantiate any evidence of voter fraud, and where Kansas, unlike Wyoming, did not provide provisional ballots and a cure period. Plaintiff must demonstrate harm that is not only likely, but irreparable, meaning that it cannot be undone by a favorable ruling at a later stage. But Plaintiff offers no concrete evidence that HB 156 will irreparably burden the right to vote of any individual by the time of the next Wyoming election in August of 2026. Thus, Plaintiff's alleged harm is speculative and not irreparable, and its request for preliminary injunctive relief should be denied, especially because it cannot demonstrate that the law is invalid in all its applications. *Crawford*, 553 U.S. at 202 ("A

14

facial challenge must fail where the statute has a plainly legitimate sweep.") (internal quotation omitted).

In sum, the modest burden imposed by HB 156 does not outweigh Wyoming's compelling interest in preventing noncitizen voting, which, under *Crawford,* is "sufficient to defeat [Plaintiff's] facial challenge." *Id.* at 203. The Court should therefore deny Plaintiff's request for a preliminary injunction.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for preliminary injunction should be denied.

Dated: July 7th, 2025                                  Respectfully submitted,

                                                            s/ *Gabriel Canaan*
                                                            GABRIEL R. CANAAN
                                                            D.C. Bar No. 90025172
                                                            **Immigration Reform Law Institute**
                                                            25 Massachusetts Ave., NW, Suite 335
                                                            Washington, DC 20001
                                                            (202) 232-5590
                                                            gcanaan@irli.org
                                                            Counsel for *Amicus Curiae*
                                                            Immigration Reform Law Institute

## CERTIFICATE OF COMPLIANCE

This brief complies with Wyoming Local Civil Rule 7.1(b) because it contains less than 25 pages, not including the cover page, table of contents, signature block, certificate of service and this certificate.

Dated: July 7th, 2025                                               /s/   *Gabriel Canaan*