Darold W. Killmer, No. 8-6643
Reid Allison*
Madison Lips*
**KILLMER LANE, LLP**
1543 Champa St., Suite 400
Denver, CO 80202
dkillmer@killmerlane.com
rallison@killmerlane.com
mlips@killmerlane.com
Tel: (303) 571-1000

Elisabeth C. Frost*
Katie Chamblee-Ryan*
Daniel Cohen*
Nicole Wittstein*
Julianna D. Astarita*
**ELIAS LAW GROUP LLP**
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
efrost@elias.law
kchambleeryan@elias.law
dcohen@elias.law,
nwittstein@elias.law
jastarita@elias.law
Tel: (202) 968-4490

*Admitted pro hac vice*
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| **EQUALITY STATE POLICY CENTER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| **CHUCK GRAY**, in his official capacity as | ) | Civil Action No. 25-cv-00117-SWS |
| Wyoming Secretary of State; *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S OPPOSITION TO REPUBLICAN NATIONAL COMMITTEE'S
## MOTION TO INTERVENE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 1

I.      The RNC is not entitled to intervene as of right. .............................................. 1

        A.      The RNC does not have an unlimited right to intervene in election cases. ............ 2

        B.      This lawsuit will not impair the RNC's legally protectable interests. .................... 4

        C.      Defendant Gray adequately represents the RNC's interests. ................................. 7

II.     This Court should deny or, alternatively, limit permissive intervention. ........................... 9

CONCLUSION ....................................................................................................................... 10

CERTIFICATE OF SERVICE ............................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Ass'n of People with Disabilities v. Herrera*,
    257 F.R.D. 236 (D.N.M. 2008) .................................................................. 4, 5

*Ariz. Democratic Party v. Hobbs*,
    18 F.4th 1179 (9th Cir. 2021) .................................................................. 5

*Bost v. Ill. State Bd. of Elections*,
    75 F.4th 682 (7th Cir. 2023) .................................................................. 9

*City of Stilwell v. Ozarks Rural Elec. Co-op. Corp.*,
    79 F.3d 1038 (10th Cir. 1996) .................................................................. 9

*Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Int.*,
    100 F.3d 837 (10th Cir. 1996) .................................................................. 4

*Common Cause Ind. v. Lawson*,
    No. 1:17-cv-0393, 2018 WL 1070472 (S.D. Ind. Feb. 27, 2018) .................... 5

*Common Cause R.I. v. Gorbea*,
    2020 No. 1:20-CV-0031, 2020 WL 4365608 (2020) .................................... 4

*Democracy N.C. v. N.C. State Bd. of Elections*,
    No. 1:20CV457, 2020 WL 6589359 (M.D.N.C. June 30, 2020) ................... 4, 9

*Donald J. Trump for President, Inc. v. Boockvar*,
    493 F. Supp. 3d 331 (W.D. Pa. 2020) ...................................................... 5

*Fish v. Schwab*,
    957 F.3d 1105 (10th Cir. 2020) .............................................................. 6, 7

*Issa v. Newsom*,
    No. 20-cv-104, 2020 WL 3074351 (E.D. Cal. June 10, 2020) ...................... 2

*Kane County, Utah v. United States*,
    94 F.4th 1017 (10th Cir. 2024) .............................................................. 1

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) .................................................................. 3

*League of Women Voters of Mich. v. Johnson*,
    No. 2:17-CV-14148, 2018 WL 10483889 (E.D. Mich. Apr. 4, 2018) ............. 4

*Liebert v. Wis. Elections Comm'n*,
    345 F.R.D. 169 (W.D. Wis. 2023) ............................................................... 5

*Mecinas v. Hobbs*,
    340 F.4th 890 (9th Cir. 2022) ..................................................................... 6

Min. Entry, *Brown v. Detzner*,
    No. 3:12-cv-852 (M.D. Fla. Sept. 19, 2012), Doc. 38 ......................... 3

Min. Order, *United States v. Georgia*,
    No. 1:21-cv-2575 (N.D. Ga. July 12, 2021) ......................................... 3

*One Wis. Inst., Inc. v. Nichol*,
    310 F.R.D. 394 (W.D. Wis. 2015) .............................................................. 9

Order, *Black Voters Matter Fund v. Raffensperger*,
    No. 1:20-cv-4869 (N.D. Ga. 2020), Doc. 42 ......................................... 3

Order, *DNC v. Hobbs*,
    No. CV-22-01369 (D. Ariz. Aug. 24, 2022), Doc. 18 ......................... 2

Order, *Fla. State Conf. of Branches & Youth Units of the NAACP v. Lee*,
    No. 4:21-cv-187 (N.D. Fla. June 8, 2021), Doc. 43 ............................ 3

Order, *Ga. State Conf. of NAACP v. Raffensperger*,
    No. 1:21-cv-1259 (N.D. Ga. June 4, 2021), Doc. 40 ........................... 3

Order, *Harriet Tubman Freedom Fighters Corp. v. Lee*,
    No. 4:21-cv-242 (N.D. Fla. July 6, 2021), Doc. 34 ............................ 3

Order, *Int'l All. of Theater Stage Emps. Local 927 v. Lindsey*,
    No. 1:23-cv-4929 (N.D. Ga. May 3, 2024), Doc. 84 ........................... 3

Order, *League of United Latin Am. Citizens v. Exec. Office of the Pres.*,
    No. 1:25-cv-946 (D.D.C. June 12, 2025), Doc. 135 ........................ 2, 3

Order, *League of Women Voters of Fla. v. Lee*,
    No. 4:21cv186 (N.D. Fla. Dec. 8, 2021), Doc. 365 .............................. 4

Order, *League of Women Voters of Fla. v. Lee*,
    No. 4:21cv186 (N.D. Fla. June 4, 2021), Doc. 72 ............................... 3

Order, *League of Women Voters of Ohio v. LaRose*,
    No. 1:23-cv-2414 (N.D. Ohio Feb. 6, 2024), Doc. 25 ........................ 3

Order, *Mi Familia Vota v. Hobbs*,
   No. 2:21-cv-01423-DWL (D. Ariz. Oct. 4, 2021), Doc. 53 ................................................. 10

Order, *Mi Familia Vota v. Hobbs*,
   No. 2:22-cv-00509 (D. Ariz. June 23, 2022), Doc. 57 ........................................................ 2

Order, *Mont. Pub. Int. Rsch. Grp. v. Jacobsen*,
   No. 6:23-cv-70 (D. Mont. Jan. 18, 2024), Doc. 34 ............................................................. 3

Order, *N.H. Youth Movement v. Scanlan*,
   No. 24-cv-291-SE (D.N.H. Mar. 13, 2025), Doc. 48 .......................................................... 4

Order, *New Ga. Project v. Raffensperger*,
   No. 1:21-cv-1333 (N.D. Ga. June 4, 2021), Doc. 39 .......................................................... 3

Order, *Vote.org v. Byrd*,
   No. 4:23-cv-111 (N.D. Fla. May 26, 2023), Doc. 85 ........................................................... 3

Order, *VoteVets Action Fund v. Detzner*,
   No. 4:18-cv-524 (N.D. Fla. Nov. 12, 2018), Doc. 16 .......................................................... 3

Order, *Wood v. Raffensperger*,
   No. 1:20-cv-5155 (N.D. Ga. Dec. 22, 2020), Doc. 14 ......................................................... 3

*Pub. Serv. Co. of N.H. v. Patch*,
   136 F.3d 197 (1st Cir. 1998) ................................................................................................. 2

*RNC v. Wetzel*,
   2024 No. 1:24-cv-00025-LG-RPM (S.D. Miss. 2024) ........................................................ 9

*Short v. Brown*,
   893 F.3d 671 (9th Cir. 2018) ................................................................................................ 6

*Tri-State Generation & Transmission Ass'n, Inc. v. N.M. Pub. Reg. Comm'n*,
   787 F.3d 1068 (10th Cir. 2015) .................................................................................... 7, 7, 9

*Yazzie v. Hobbs*,
   No. CV-20-08222-PCT-GMS, 2020 WL 8181703, at *4 (D. Ariz. Sept. 16, 2020)............. 4

**Federal Rules**

Fed. R. Civ. P. 24 ........................................................................................................... 1, 4, 5

**Other Authorities**

Public News Service, *WY Survey: Voters Have More Faith In County-Level Counting* (Nov. 4, 2024), https://perma.cc/UEF3-KX8E .................................................................................. 6

Univ. of Wyo., *UW Survey Finds High Public Confidence in State Election Integrity* (Nov. 4, 2022), https://perma.cc/GZY6-3E2V ....................................................................................... 6

Wyo. Sec'y of State, 2024 Off'l Gen. Election Results, https://perma.cc/XU5N-QDR7 ............. 7

Wyoming, 2023 Demographics & Social, Migration Pol'y Inst., https://www.migrationpolicy.org/data/state-profiles/state/demographics/WY (last accessed July 10, 2025)............................................................................................................. 7

## INTRODUCTION

The Republican National Committee's ("RNC") claim that an "ocean of precedent" recognizes its "unconditional" right to intervene in cases like this one, Mem. in Support of Mot. to Intervene at 1–3, Doc. 58 ("Mem."), is false. Of the cases the RNC cites to illustrate its claim, only one granted intervention as of right. *See* Mem. at 2 n.1. The rest involved permissive intervention, often in cases where the motion to intervene was unopposed. And in cases like this one, where a nonpartisan plaintiff challenges a law based on the burdens that it will impose on voters of *all* political affiliations, and the Secretary of State is vigorously defending that law with experienced outside counsel, there is no basis for intervention as of right. Permissive intervention is also not appropriate. All it would do is add unnecessary complication to a matter that requires speedy resolution. And the RNC could just as well serve any purported interests as amicus.

The Court should deny the motion. But if it grants it, the Court should impose conditions to avoid unnecessarily duplicating or multiplying the issues that the parties and the Court must contend with, including by requiring the RNC to move for leave to file separate briefing, conduct separate discovery, or present separate testimony from the Secretary, if and when the RNC believes that its interests are not adequately represented by the Secretary on a particular issue.

## ARGUMENT

### I.   The RNC is not entitled to intervene as of right.

To intervene as of right under Federal Rule of Civil Procedure 24(a), the movant must show: (1) its application is timely; (2) it has a cognizable interest relating to the subject of the action; (3) it is so situated that disposition of the action may impede or impair its ability to protect that interest; and (4) its interest is inadequately represented by the existing parties. Fed. R. Civ. P. 24(a)(2); *Kane County, Utah v. United States*, 94 F.4th 1017, 1029–30 (10th Cir. 2024). An applicant for intervention as of right "must run the table and fulfill all four of these preconditions."

1

*Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998). Failure to satisfy any one of these requirements "dooms intervention." *Id.* Here, the RNC fails to satisfy at least three.

**A.      The RNC does not have an unlimited right to intervene in election cases.**

The RNC's claim that political parties have an "unconditional" right to intervene in election-law cases is too simplistic. Mem. at 3; *see id.* at 1–2, 7–8. Political parties, like everyone else, must meet the ordinary intervention standards. And where, as here, a case is brought by a nonpartisan plaintiff seeking to facilitate the right to vote for the citizenry as a whole, courts have regularly denied intervention to intervenors like the RNC, unless they can show that (1) the resolution of the case could make it harder for their voters to vote or have their ballots counted, or (2) the existing parties may not adequately represent their interests (particularly where the existing parties include the opposition political party).[1]

The RNC cites nothing to the contrary. For example, it relies heavily on *DNC v. Hobbs* as an exemplar of its right to intervene, *see* Mem. at 1–2, but omits that the RNC was *denied* intervention in the original case (brought by a nonpartisan plaintiff) before it was consolidated with the DNC's case, and that when the court subsequently granted intervention after consolidation, it was unopposed. Order at 3–6, *Mi Familia Vota v. Hobbs*, No. 2:22-cv-00509 (D. Ariz. June 23, 2022), Doc. 57; Order, *DNC v. Hobbs*, No. CV-22-01369 (D. Ariz. Aug. 24, 2022), Doc. 18. Another case on which the RNC heavily relies, *LULAC v. Executive Office of the President*, had also been consolidated with a case brought by the DNC when the court granted the

---

[1] *See, e.g.*, Order at 9, 12, *League of United Latin Am. Citizens v. Exec. Office of the Pres. ("LULAC")*, No. 1:25-cv-946 (D.D.C. June 12, 2025), Doc. 135 (granting RNC intervention where DNC was already a plaintiff in consolidated case); *Issa v. Newsom*, No. 20-cv-1044-MCE-CKD, 2020 WL 3074351, at 3–4 (E.D. Cal. June 10, 2020) (granting Democratic party committees intervention to "assert[] the rights of their members to vote safely" by mail during the COVID-19 pandemic).

RNC's motion to intervene. Order at 1–2, *LULAC*, *supra* n.1.

Indeed, of all the cases the RNC cites, only one involved an explicit grant of intervention as of right—and there, the law at issue directly regulated the political committee that sought to intervene. *La Union del Pueblo Entero v. Abbott ("LUPE")*, 29 F.4th 299, 306 (5th Cir. 2022) (granting political committees intervention as of right where the challenged law "unquestionably regulate[d] the conduct of the Committees' volunteers and poll watchers"). The remaining cases involved permissive intervention, all of which were either unopposed[2] or granted with limited or no reasoning.[3] *See* Mem. at 2 n.1 (listing cases). Further, the RNC inflates its supposed support. Two of the cases it cites are identical orders from the same consolidated cases granting permissive intervention.[4] *See id.* Three are substantively identical orders from the same judge in related (and eventually consolidated) cases, and in each instance the court granted permissive intervention because it was concerned that the prospective intervenors' appeal of a denial could delay

---

[2] Min. Order, *United States v. Georgia*, No. 1:21-cv-2575 (N.D. Ga. July 12, 2021); Order, *League of Women Voters of Ohio v. LaRose*, No. 1:23-cv-2414 (N.D. Ohio Feb. 6, 2024), Doc. 25; Order, *Vote.org v. Byrd*, No. 4:23-cv-111 (N.D. Fla. May 26, 2023), Doc. 85; Order, *Wood v. Raffensperger*, No. 1:20-cv-5155 (N.D. Ga. Dec. 22, 2020), Doc. 14; Order, *VoteVets Action Fund v. Detzner*, No. 4:18-cv-524 (N.D. Fla. Nov. 12, 2018), Doc. 16.

[3] Order at 3, 7, *Int'l All. of Theater Stage Emps. Local 927 v. Lindsey*, No. 1:23-cv-4929 (N.D. Ga. May 3, 2024), Doc. 84 (granting permissive intervention after considering only whether there was a common question of fact or law and whether it would cause undue delay or prejudice); Order at 9–12, *Mont. Pub. Int. Rsch. Grp. v. Jacobsen*, No. 6:23-cv-70 (D. Mont. Jan. 18, 2024), Doc. 34 (same); Order at 5–7, *New Ga. Project v. Raffensperger*, No. 1:21-cv-1333 (N.D. Ga. June 4, 2021), Doc. 39 (same); Order at 5–7, *Ga. State Conf. of NAACP v. Raffensperger*, No. 1:21-cv-1259 (N.D. Ga. June 4, 2021), Doc. 40 (same); Order at 5–6, *Black Voters Matter Fund v. Raffensperger*, No. 1:20-cv-4869 (N.D. Ga. Dec. 9, 2020), Doc. 42 (same); Min. Entry, *Brown v. Detzner*, No. 3:12-cv-852 (M.D. Fla. Sept. 19, 2012), Doc. 38 (granting permissive intervention with no reasoning); *see also* Order at 2–4, *Harriet Tubman Freedom Fighters Corp. v. Lee*, No. 4:21-cv-242 (N.D. Fla. July 6, 2021), Doc. 34 (granting permissive intervention to avoid the delay associated with an appeal); Order at 2–4, *Fla. State Conf. of Branches & Youth Units of the NAACP v. Lee*, No. 4:21-cv-187 (N.D. Fla. June 8, 2021), Doc. 43 (same); Order at 2–3, *League of Women Voters of Fla. v. Lee*, No. 4:21cv186 (N.D. Fla. June 4, 2021), Doc. 72 (same).

[4] These are the June 4, 2021, orders from the *Raffensperger* litigations cited above in n.3.

resolution.[5] *See id.*

In contrast, where the RNC has sought to intervene in cases brought by nonpartisan plaintiffs to make it easier for *all* voters to vote, its intervention has often been denied. *See, e.g.*, Order, *N.H. Youth Movement v. Scanlan*, No. 24-cv-291-SE (D.N.H. Mar. 13, 2025), Doc. 48 (stating, in nonpartisan challenge to New Hampshire's DPOC requirement, that court had "indicated its intent to deny" RNC and state Republican committee's intervention motion); *see also Democracy N.C. v. N.C. State Bd. of Elections*, No. 1:20CV457, 2020 WL 6589359, at *1 (M.D.N.C. June 30, 2020); *Yazzie v. Hobbs*, No. CV-20-08222-PCT-GMS, 2020 WL 8181703, at *4 (D. Ariz. Sept. 16, 2020); *Common Cause R.I. v. Gorbea*, No. 1:20-CV-00318-MSM-LDA, 2020 WL 4365608, at *3 n.5 (D.R.I. July 30, 2020); *League of Women Voters of Mich. v. Johnson*, No. 2:17-CV-14148, 2018 WL 10483889, at *1 (E.D. Mich. Apr. 4, 2018); *Am. Ass'n of People With Disabilities v. Herrera*, 257 F.R.D. 236, 258 (D.N.M. 2008).

In sum, the Court must consider whether the RNC satisfies each of Rule 24(a)'s requirements to determine whether it is entitled to intervention as of right.

**B.    This lawsuit will not impair the RNC's legally protectable interests.**

The RNC fails to establish that it has a cognizable interest that would justify intervention, or that Plaintiff's success would impede its interests. Fed. R. Civ. P. 24(a)(2). The Tenth Circuit requires intervenors to demonstrate that their asserted interests in the outcome of the litigation are "direct, substantial, and legally protectable." *Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Int.*, 100 F.3d 837, 840 (10th Cir. 1996). The RNC's motion repeatedly falls short.

First, the "interests" that the RNC asserts in this litigation are primarily abstract concerns

---

[5] These are the orders from *Harriet Tubman Freedom Fighters*, *NAACP*, and *League of Women Voters of Fla.* (all *v. Lee*) cited above in note 3. *See* Order, *League of Women Voters of Fla.*, *supra*, (N.D. Fla. Dec. 8, 2021), Doc. 365 (order consolidating cases for trial).

about election integrity and voter confidence, but courts have repeatedly found such interests too speculative and generalized to support intervention.[6] Anticipating this, the RNC protests that its "interests are not too generalized" because "[n]ot all Wyomingites have an interest in electing *Republicans* or conserving the resources of the *Republican Party*." Mem. at 6. But enjoining HB 156 will not uniquely impact Republican voters or the Republican Party. To the contrary, an injunction will ensure that *all voters* can register (as they could before the enactment of HB 156) without providing DPOC—including voters who vote for Republican candidates.

Thus, when the RNC claims that it must intervene to protect its "interest in Republican voters voting," *Id*. at 4; *id.* at 5–7, it clearly does not mean that this case threatens the ability of Republican voters to exercise their right to vote. To the extent the RNC means to insinuate that, if HB 156 is enjoined it will benefit the RNC because it will make it *harder* for non-Republican voters to vote, no court has ever found that there is a cognizable interest in keeping other voters from voting. *See, e.g.*, *Harris v. Pernsley*, 820 F.2d 592, 601 (3d Cir.), *cert. denied*, 484 U.S. 947 (1987) (concluding interest in perpetuating "unconstitutional conditions" not a "legally protected interest" that can support intervention); *Ariz. Democratic Party v. Hobbs*, 18 F.4th 1179, 1195–96 (9th Cir. 2021) ("The 2019 law made it *easier* for a different category of voters to effect their vote,

---

[6] *See, e.g.*, *Liebert v. Wis. Elections Comm'n*, 345 F.R.D. 169, 173 (W.D. Wis. 2023) (holding "the integrity of the election process" is "not a 'direct, significant and legally protectable interest'") (citation omitted); *Common Cause Ind. v. Lawson*, No. 1:17-cv-03936-TWP-MPB, 2018 WL 1070472, at *4–5 (S.D. Ind. Feb. 27, 2018) (finding organization's claimed interests in "state control over structuring its own election system" and the state's "ability to conduct fair and robust elections" "too generalized to afford a right to intervention under Rule 24(a)"); *Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 253 (D.N.M. 2008) ("[A]n interest in fair elections and the prevention of voter registration fraud . . . [is] too general an interest to form the basis of a rule 24(a) [sic] motion."); *Miracle v. Hobbs*, F.R.D. 151, 155 (D. Ariz. 2019) (rejecting Republican legislators' "highly generalized argument that [they] ha[d] an interest in upholding the constitutionality of the [election regulation]"); *cf. Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 376 (W.D. Pa. 2020) (holding plaintiffs, including the RNC, lacked standing to vindicate generalized election integrity interests).

but we fail to see how that law raises constitutional concerns here." (citing *Short v. Brown*, 893 F.3d 671, 678 (9th Cir. 2018))); *cf. Mecinas v. Hobbs*, 340 F.4th 890, 898 (9th Cir. 2022) (explaining a political party or candidate asserting competitive standing must show an injury that creates "an unfair advantage").

Instead, the RNC appears to contend that this litigation threatens Republican voters because they might stay home if HB 156 is enjoined due to resulting diminished voter confidence. Mem. at 4. But the RNC does not offer any evidence to support this speculation, which is contrary to studies done by the University of Wyoming in 2022 and 2024 of *Wyoming* voters, reporting high levels of confidence about the State's elections before the enactment of HB 156.[7] It is also contrary to Tenth Circuit precedent that found the Kansas DPOC law might have the exact opposite effect, by making it harder for citizens to vote, with no meaningful or actual anti-fraud benefit. Mem. at 4–5; *Fish v. Schwab*, 957 F.3d 1105, 1134–35 (10th Cir. 2020) (finding Kansas's DPOC requirement may erode voter confidence by excluding qualified voters while "only nominally preventing noncitizen voter registration") (quotations omitted).

That leaves the RNC's unsubstantiated assertions that this lawsuit implicates its "interest in Republican candidates winning," which it claims is threatened if the voter rolls "contain ineligible non-citizen registrations," and its claim that it must "divert resources . . . to reinspire Republican voter trust in Wyoming's electoral system, to independently verify the accuracy of Wyoming's voter registration rolls, and to educate voters and candidates concerning Wyoming's changed registration requirements." Mem. at 5. But Wyoming voters consistently elect Republicans by overwhelming margins and only 3.6% of the population is foreign-born (nearly

---

[7] *See, e.g.*, Public News Service, *WY Survey: Voters Have More Faith In County-Level Counting* (Nov. 4, 2024), https://perma.cc/UEF3-KX8E; Univ. of Wyo., *UW Survey Finds High Public Confidence in State Election Integrity* (Nov. 4, 2022), https://perma.cc/GZY6-3E2V.

half of whom are citizens).[8] Moreover, the RNC's bald assertion that the voter rolls will be inaccurate if the DPOC requirement is enjoined ignores that, in other states that have imposed DPOC, the actual impact has been to suspend, remove, or exclude substantial numbers of *citizen* voters from the voter rolls. *See Fish*, 957 F.3d at 1128; *see also* Compl. ¶¶ 95–120, Doc. 1; Pl.'s Mem. in Support of Mot. for Prelim. Inj. at 3–5, 12, Doc. 16. And it is HB 156's DPOC requirement that would change the law and threaten to disenfranchise voters unaware of the new requirements, necessitating voter education, not the other way around.

### C.    Defendant Gray adequately represents the RNC's interests.

Even if the Court found that the RNC asserted a cognizable protectible interest in this litigation sufficient to satisfy Rule 24, Tenth Circuit precedent is clear that "it is not entitled to intervene if its interest is adequately represented by existing parties." *Tri-State Generation & Transmission Ass'n, Inc. v. N.M. Pub. Reg. Comm'n*, 787 F.3d 1068, 1072 (10th Cir. 2015) (quotations omitted). Here, Secretary Gray more than adequately represents the RNC's interests. This alone forecloses intervention as of right.

In the Tenth Circuit, "where the objective of the applicant for intervention *is identical to that of one of the parties*," the Court must "presume representation is adequate." *Id.* (citations and quotation marks omitted). And Tenth Circuit precedent makes clear that it is a shared litigation objective that matters, even if the reasons for that objective diverge. *See id.* at 1072–73. Under that precedent, a suit like this "presents a 'binary' issue"—whether HB 156 is constitutional—and it is enough that the RNC and the Secretary have the same objective: to argue that it *is*. *Id.* at 1073. "To

---

[8]    *See, e.g.*, Wyo. Sec'y of State, 2024 Off'l Gen. Election Results at 27–29, https://perma.cc/XU5N-QDR7 (showing Republican candidates receiving more than twice as many votes as their Democratic opponents); Wyoming, 2023 Demographics & Social, Migration Pol'y Inst., https://www.migrationpolicy.org/data/state-profiles/state/demographics/WY (last accessed July 10, 2025).

overcome this presumption" of adequate representation, the RNC "must make 'a concrete showing of circumstances'" that the Secretary's representation "is inadequate." *Id.* at 1073.

The RNC fails to do so—indeed it does not even try. The RNC does not allege, for example, that there is "collusion between [Secretary Gray] and an opposing party"; that Secretary Gray has "failed to represent" the RNC's interests thus far; that Secretary Gray has "an interest adverse to" the RNC's interests, or any other basis that the Tenth Circuit has found might overcome the presumption of adequacy. *Tri-State*, 787 F.3d at 1073. Nor can the RNC plausibly dispute adequacy of representation here under the Tenth Circuit's standard. Secretary Gray's defense of HB 156 rests on the same purported "election integrity" concerns that the RNC cites to support its motion to intervene. *Compare* Def.'s Opp'n Mot. Prelim. Inj. at 18, 25, Doc. 65 (Secretary Gray defending HB 156 based on election integrity and voter confidence concerns), *with* Mem. at 4–5 (RNC asserting its interests in protecting "the integrity of Wyoming's election system" and "[s]afeguarding Republican voter confidence"). Further, Secretary Gray has pledged to "vigorously defend" the challenged law. Doc. 30-2 at 2. To that end, he deputized outside counsel, *see* Order at 2, Doc. 39; filed a motion to dismiss, Doc. 66; and opposed Plaintiff's motion for a preliminary injunction, Doc. 65. Where, as here, there is "no reason to think [the government] will not vigorously argue in favor of" the challenged law, the presumption of adequacy cannot be overcome. *Tri-State*, 787 F.3d at 1074.[9]

To counter these headwinds, the RNC concocts a handful of hypothetical ways in which the Secretary's interests might "diverge" from its own, arguing that the Secretary lacks the RNC's specific interests in "promoting Republican candidates' electoral success, supporting Republican

---

[9] *See also* Mem. at 7 (RNC admitting that it "doesn't pursue relief not requested by an existing party" (cleaned up)); Doc. 57-3 at 21 (RNC's proposed Answer seeking no separate relief).

voters, and conserving Republican party resources." Mem. at 8. But at most, these describe "differen[ces] [in] 'ultimate motivation[s],'" which the Tenth Circuit has held irrelevant where the parties' litigation objective is the same. *See Tri-State*, 787 F.3d at 1072–73.

**II.    This Court should deny or, alternatively, limit permissive intervention.**

Whether to allow permissive intervention is broadly within this Court's discretion, and courts in this circuit have declined to allow it where—as here—the intervenor's interests are adequately represented by existing defendants and where intervention might cause delay, prejudice, or unnecessary complication. *See, e.g.*, *id.* at 1074–75 (affirming denial of permissive intervention on this basis); *City of Stilwell v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1043 (10th Cir. 1996) (same). The same is true in courts across the country where intervention is sought in election cases that demand a speedy resolution. *See, e.g.*, *Bost v. Ill. State Bd. of Elections*, 75 F.4th 682, 691 (7th Cir. 2023); *One Wis. Inst., Inc. v. Nichol*, 310 F.R.D. 394, 399 (W.D. Wis. 2015); *Democracy N.C.*, 2020 WL 6589359, at *2. This Court should do the same here.

The RNC's "legal interests and arguments are closely aligned with those of" Secretary Gray, *Bost*, 75 F.4th at 691, and it has failed to assert or substantiate any separate interests that would render its participation anything other than duplicative. As such, its "addition as a party would add little substance" and serve only to "use up the court's time and resources" in "an election-law case that needs to be streamlined and decided quickly." *Id*. To the extent that RNC has any distinct arguments not raised by Secretary Gray, it can seek leave to file an amicus brief. *See, e.g.*, Order at 10–11, *RNC v. Wetzel*, No. 1:24-cv-00025-LG-RPM (S.D. Miss. Mar. 7, 2024), Doc. 47; *Democracy N.C.*, 2020 WL 6589359, at *2.

In the alternative, if the Court is nevertheless inclined to allow intervention, it should limit the scope of that intervention to avoid duplicative briefing and minimize delay. Specifically, the Court should require the RNC, if it believes its interests are not adequately represented by the

existing parties on a particular issue, to move for leave to file separate briefing, conduct separate

discovery, or present separate testimony. *See* Order at 3–4, *Mi Familia Vota v. Hobbs*, 2:21-cv-

01423-DWL (D. Ariz. Oct. 4, 2021), Doc. 53 (imposing similar restrictions on intervenor).

## CONCLUSION

For the foregoing reasons, the Court should deny the RNC's motion to intervene.

Dated: July 10, 2025                    Respectfully submitted,

                                             */s/ Elisabeth C. Frost*
                                             Elisabeth C. Frost*
                                             Katie Chamblee-Ryan*
                                             Daniel Cohen*
                                             Nicole Wittstein*
                                             Julianna D. Astarita*
                                             **ELIAS LAW GROUP LLP**
                                             250 Massachusetts Avenue NW, Suite 400
                                             Washington, D.C. 20001
                                             efrost@elias.law
                                             kchambleeryan@elias.law
                                             dcohen@elias.law
                                             nwittstein@elias.law
                                             jastarita@elias.law
                                             (202) 968-4490

                                             Darold W. Killmer, No. 8-6643
                                             Reid Allison*
                                             Maddie Lipps*
                                             **Killmer Lane, LLP**
                                             1543 Champa St., Suite 400
                                             Denver, CO 80202
                                             dkillmer@killmerlane.com
                                             (303) 571-1000

                                             *Attorneys for Plaintiff*
                                             *Equality State Policy Center*

                                             *\*Admitted Pro Hac Vice*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on the 10th of July, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States District Court for the District of Wyoming by using the CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system.

*<u>/s/ Elisabeth C. Frost</u>*
Elisabeth C. Frost
