Conner G. Nicklas (Wyo. Bar No. 7-5908)
THE FALEN LAW OFFICES LLC
300 East 18th Street
Cheyenne, WY 82003
Ph: (307) 632-5105
Fx: (307) 637-3891
conner@buddfalen.com

Michael A. Columbo *
Mark P. Meuser *
DHILLON LAW GROUP, INC.
177 Post Street, Suite 700
San Francisco, CA 94108
Ph: (415) 944-4996
mcolumbo@dhillonlaw.com
mmeuser@dhillonlaw.com

Scott E. Gessler *
GESSLER BLUE LLC
7350 East Progress Place, Ste. 100
Greenwood Village, CO 80111
Ph: (720) 647-5320
sgessler@gesslerblue.com

   * Admitted *Pro Hac Vice*

*Attorneys for Defendant*
*Wyoming Secretary of State Chuck Gray*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| **EQUALITY STATE POLICY CENTER**, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 25-cv-000117-SWS |
| **CHUCK GRAY**, in his official capacity as Wyoming Secretary of State, *et al.*, | ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF DEFENDANT CHUCK GRAY'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................................ ii

**INTRODUCTION** ................................................................................................................................ 1

**ARGUMENT** ........................................................................................................................................ 1

    I.    Plaintiff Has Not Pleaded a Legally Cognizable Organizational Injury. ................ 1

        A.    *Alliance for Hippocratic Medicine* Controls and Bars Plaintiff's Standing Theory. .............................................................................................................................. 2

        B.    Plaintiff Has Not Shown an Imminent Organizational Injury ..................... 5

    II.    Plaintiff Has Not Established Associational Standing. ............................................ 7

        A.    Plaintiff Fails to Satisfy the Standard Articulated in *Hunt*. ........................ 7

        B.    Plaintiff's Alleged Injuries to Its Individual Members Are Speculative ... 10

**CONCLUSION** .................................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**                                                                               **Page(s)**

*Am. Chem. Council v. Dep't of Transp.*,
   468 F.3d 810 (D.C. Cir. 2006) .................................................................................................. 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................ 10

*Cf. Republican Nat'l Comm. v. North Carolina State Bd. of Elections*,
   120 F.4th 390 (4th Cir. 2024) ............................................................................................... 3, 4

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ............................................................................................................ 6, 10

*Crawford v. Marion County Election Bd.*,
   553 U.S. 181 (2008) ............................................................................................................. 8, 9

*Deep S. Ctr. for Env't Just. v. EPA*,
   138 F.4th 310 (5th Cir. 2025) ............................................................................................... 5, 7

*FDA v. Alliance for Hippocratic Medicine*,
   602 U.S. 367 (2024) .......................................................................................................... 1, 2, 5

*Greater Indianapolis Chapter of NAACP v. Ballard*,
   741 F. Supp. 2d 925 (S.D. Ind. 2010) ...................................................................................... 9

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) .................................................................................................................. 2

*Hunt v. Washington State Apple Comm'n*,
   432 U.S. 333 (1977) .................................................................................................................. 7

*La Union Del Pueblo v. Abbott*,
   753 F. Supp. 3d 515 (W.D. Tex. 2024) ................................................................................. 4, 5

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ......................................................................................................... 1, 6, 10

*LULAC v. Executive Office of the President*,
   No. 25-0946 (CKK), 2025 WL 1187730 (D.D.C. Apr. 24, 2025) ............................................ 3

*March for Our Lives Idaho v. McGrane*,
   749 F. Supp. 3d 1128 (D. Idaho 2024) ..................................................................................... 3

*N. New Mexicans Protecting Land Water Rts. v. United States*,
   161 F. Supp. 3d 1020 (D.N.M. 2016) ...................................................................................... 8

*Northeast Ohio Coal. for Homeless and Serv. Employees Int'l Union, Local 1199 v. Blackwell*,
467 F.3d 999 (11th Cir. 2006) ........ 7

*Osage Producers Ass'n v. Jewell*,
191 F. Supp. 3d 1243 (N.D. Okla. 2016) ........ 8

*Padres Unidos de Tulsa v. Drummond*,
No. CIV-24-511-J, 2025 WL 1444433 (W.D. Okla. May 20, 2025) ........ 8

*Producers of Renewables United for Integrity Truth and Transparency v. EPA*,
No. 19-9532, 2022 WL 538185 (10th Cir. Feb. 23, 2022) ........ 8

*Speech First, Inc. v. Shrum*,
92 F.4th 947 (10th Cir. 2024) ........ 9

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ........ 8

*Tenth St. Residential Ass'n v. City of Dallas*,
968 F.3d 492 (5th Cir. 2020) ........ 7

*WildEarth Guardians v. U.S. Off. of Surface Mining, Reclamation and Enforcement*,
104 F. Supp. 3d 1208 (D. Colo. 2015) ........ 8

**<u>Statutes</u>**

002-16 Wyo. Code R. §§ 16-5 ........ 4

52 U.S.C. § 10508 ........ 4

**<u>Rules</u>**

Federal Rule of Civil Procedure 12(h)(3) ........ 1

# INTRODUCTION

Plaintiff's Opposition fails to address the jurisdictional defects identified in Defendant Wyoming Secretary of State Chuck Gray's ("Defendant") Motion to Dismiss. Rather, it confirms that Plaintiff lacks Article III standing and that its Complaint should be dismissed.

Article III standing is not a pleading formality. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). It is a jurisdictional prerequisite that Plaintiff bears the burden of affirmatively establishing. *Id.* at 561. Plaintiff has not alleged an injury-in-fact—either to itself or to any identifiable member.

First, Plaintiff's claim of organizational injury is squarely foreclosed by the U.S. Supreme Court's recent decision in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024) ("*Alliance*"). There, the Court reaffirmed the principle that an organization cannot manufacture standing merely by choosing to redirect its resources in response to a government policy.

Second, Plaintiff has not pleaded a sufficient factual basis to recognize its standing on associational grounds. Plaintiff has failed to identify a single individual who faces a concrete or imminent injury as a result of HB 156's DPOC requirements. Instead, it relies on general assertions that its member organizations serve communities that <u>might</u> be affected. This is insufficient.

Therefore, this Court lacks subject matter jurisdiction and must dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(h)(3).

# ARGUMENT

## I. Plaintiff Has Not Pleaded a Legally Cognizable Organizational Injury.

Plaintiff's theory of organizational standing fails as a matter of law. Its asserted injury— that it will need to expend additional resources to educate Wyoming voters about HB 156—is at odds with the U.S. Supreme Court's recent decision in *Alliance* and falls short of the Court's standard for actual or imminent harm.

1

### A. *Alliance for Hippocratic Medicine* Controls and Bars Plaintiff's Standing Theory.

The Supreme Court's decision in *Alliance* forecloses Plaintiff's theory of organizational harm. In *Alliance*, the Court determined that the plaintiff failed to demonstrate a sufficient Article III injury by alleging, *inter alia*, that the "FDA ha[d] 'caused' the associations to conduct their own studies on mifepristone so that the associations can better inform their members and the public about mifepristone's risks." 602 U.S. at 394. Plaintiff recasts this decision as turning exclusively on the fact that the plaintiffs in *Alliance* based their standing on actions taken to oppose the FDA's relaxed regulation of mifepristone. (*See* Opp'n 7.) But this is an incorrect interpretation of the Court's decision. *Alliance* did not turn on the plaintiffs' adversarial advocacy. Rather, the Court's reasoning was broader, affirming the principle that an organization cannot manufacture standing merely by choosing to respond to a law or policy with educational or outreach efforts to the detriment of its other activities. *See* 602 U.S. at 394 ("[Plaintiffs] contend that the FDA has 'forced' the associations to 'expend considerable time, energy, and resources' . . . engaging in . . . public advocacy <u>and</u> public education. [Citation]. And all of that has caused the associations to spend 'considerable resources' to the detriment of other spending priorities." (emphasis added)).

The plaintiff associations in *Alliance* premised their standing argument on the Court's earlier decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). As the Court in *Alliance* clarified, the *Havens* Court held that a plaintiff has standing where a defendant's actions "directly affect[] and interfere[] with [a plaintiff's] core business activities." 602 U.S. at 395. For example, a retailer may have standing to sue a manufacturer when that manufacturer sells defective goods to the retailer. *Id.* But such is not the case where, as here, a plaintiff elects to respond to a government action by engaging in public education about that action. *Id.* at 394. Such indirect effects on a plaintiff's business activities are not grounds for standing under *Havens*. *Id.* at 395.

2

Ignoring this nuance, Plaintiff suggests that, since *Alliance*, courts have "repeatedly applied it to find that organizations like Plaintiff have standing to challenge election laws that impede their missions in a similar way as Plaintiff alleges here." (Opp'n 9.) Plaintiff chiefly relies on two out-of-circuit district court cases: *LULAC v. Executive Office of the President*, No. 25-0946 (CKK), 2025 WL 1187730 (D.D.C. Apr. 24, 2025), and *March for Our Lives Idaho v. McGrane*, 749 F. Supp. 3d 1128 (D. Idaho 2024). (*Id.* at 9–10.) But the injuries alleged by the plaintiffs in these cases differ significantly from the harm alleged by Plaintiff here.

In *LULAC*, the court determined that the plaintiffs had standing because Section 2(a) of Executive Order 14,248 would "be a direct impediment to one of the [plaintiffs'] core business activities: registering voters." 2025 WL 1187730 at *31 (internal quotation marks and citation omitted). That is, at least some of the plaintiffs in *LULAC* were directly engaged in the act of registering voters and alleged that Section 2(a) would frustrate that component of their business. *See, e.g.*, Compl. ¶ 12, *LULAC*, No. 25-0946 (CKK) (D.D.C. Mar. 31, 2025) ("Throughout the year, LULAC's councils register prospective voters and hold voter registration drives. . . . At these events, LULAC councils often . . . collect voter registration forms and return them to local officials . . . ."); *id.* at ¶ 144. The same can be said for the District of Idaho's decision in *March for Our Lives*, where at least one of the plaintiffs was an organization that directly registered young voters. *See* Compl. ¶ 13–14, *March for Our Lives*, No. 1:23-cv-00107-AKB (D. Idaho Apr. 17, 2023).

Defendant does not contest that an organization that directly registers voters suffers harm when a policy interferes with that core activity. *Cf. Republican Nat'l Comm. v. North Carolina State Bd. of Elections*, 120 F.4th 390, 396–97 (4th Cir. 2024) (North Carolina GOP had standing to challenge North Carolina's voter list maintenance procedures where it engaged in, "hosting candidate and voter registration events, staffing voting protection hotlines, [and] investigating

3

reports of voter fraud and disenfranchisement."). But for an organization that merely advocates for registration and educates the public about registration, the same law does not harm the organization to satisfy standing, regardless of how much that organization disagrees with the policy. *Cf. Alliance*, 602 U.S. at 394.

Despite its vague characterization of its activities (*see* Compl. ¶ 23 (describing Plaintiff's core work of "encouraging voters to register" and Plaintiff's "voter registration education efforts"); Opp'n 3 (same), 6 (HB 156 interferes with "Plaintiff's ability to help qualified citizens register and vote.")), Plaintiff does not make factual allegations that it conducts registration itself, nor does it allege any facts that demonstrate HB 156 directly regulates or inhibits any of its activities. That is, Plaintiff alleges only that it engages in voter outreach and education efforts (*see, e.g.*, Compl. ¶¶ 19, 23; Opp'n 3, 13; Mem. Supp. Pl.'s Mot. Prelim. Inj., Ex. 20 ¶ 13 ("DeSarro Decl.") (Plaintiff "communicate[s] with voters about how HB 156 will affect them.")), not direct voter registration like the plaintiffs in *LULAC* and *March for Our Lives*. In fact, Wyoming prohibits County Clerks from accepting "batches of voter registration applications"; individuals must submit their own applications. 002-16 Wyo. Code R. §§ 16-5. Plaintiff, therefore, is not engaging in voter registration, but merely, in its own words, "voter registration education." (Compl. ¶ 23.) Nothing in HB 156 hinders Plaintiff's ability to educate. Plaintiff's claim of injury is, therefore, unlike the injuries in the cases it cites.

The only other post-*Alliance* case cited by Plaintiff is *La Union Del Pueblo v. Abbott*, 753 F. Supp. 3d 515 (W.D. Tex. 2024). (Opp'n 10 n.2.) But the Western District of Texas' decision is similarly inconsequential to an assessment of Plaintiff's standing. In *Abbott*, the plaintiffs were a set of organizations that provided, *inter alia*, voting assistance services to blind or disabled voters, in accordance with Section 208 of the Voting Rights Act, 52 U.S.C. § 10508, and voter

4

transportation services. *See* 753 F. Supp. 3d at 533. In 2021, Texas enacted various election regulations, including some that required individuals engaging in voter assistance and transportation to disclose personal information when assisting or transporting voters. *Id.* at 528–531. Because the plaintiff organizations demonstrated that they "have had difficulty recruiting members to provide voting assistance services due to the threat of criminal sanctions under [the disclosure requirements]," the organizations had suffered an organizational injury. *Id.* at 565–66. No such regulatory or enforcement effect can be alleged here because HB 156 does not subject Plaintiff or its members to liability or directly regulate its alleged activities. Rather, it merely alters the documentation required of voter applicants. (*See* Compl. ¶ 29.)

Plaintiff relies on minimal and inapplicable authority and asks this Court to extend *Havens* beyond its narrow core. But, as the U.S. Supreme Court has made clear, *Havens* applies only where the challenged conduct <u>directly</u> interferes with a plaintiff's core operations. *Alliance*, 602 U.S. at 395. Plaintiff's claim that HB 156 requires it to update voter education materials and expand outreach does not satisfy that standard. *See Alliance*, 602 U.S. at 394–95 (rejecting the argument that spending "considerable resources to the detriment of other spending priorities," among other things, constitutes a sufficient injury under *Havens* (internal quotation marks omitted)). Because Plaintiff has not alleged any direct interference with its "core business activities," it has not pleaded an injury sufficient to support Article III standing. *See id.* at 395; *Deep S. Ctr. for Env't Just. v. EPA*, 138 F.4th 310, 318–20 (5th Cir. 2025) (a plaintiff does not demonstrate standing under *Havens* when it fails to allege "direct interference" with its "core business activities" and merely alleges that it diverted resources towards activities with which it was already engaged).

**B.    Plaintiff Has Not Shown an Imminent Organizational Injury**.

Even if Plaintiff's alleged resource diversion were the type of harm cognizable under Article III—and it is not—Plaintiff still fails to allege that such harm is imminent. As Defendant

5

argues in his motion, Plaintiff's claims rest entirely on speculative projections about what it may need to do in the future, not on any concrete or presently occurring injury. (Mot. 8–10.) That deficiency alone is fatal to Plaintiff's standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("To establish Article III standing, an injury must be concrete, particularized, and actual or imminent[.]" (internal quotation marks omitted) (emphasis added)).

Plaintiff recites that HB 156's burdens are "already" disrupting its operations (Opp'n 12) but offers no specific allegations showing that any concrete harm will occur with any immediacy. Assertions that Plaintiff "will have to divert limited resources," (*id.*), "will need to ramp up its voter education efforts," (*id.* at 13 (internal quotation marks omitted)), or "will have to raise a lot more money," (DeSarro Decl. ¶ 13), are the sort of "some day" allegations that the U.S. Supreme Court has emphasized are insufficient to demonstrate imminence. *See Lujan*, 504 U.S. at 564.

Plaintiff claims that it has postponed two activities—"RUN WY" and "VOTE Wyoming" (Compl. ¶ 25; DeSarro Decl. ¶¶ 17–18; Opp'n 12)—but never alleges that it postponed these activities because of any concrete application of HB 156 to Plaintiff's business. Rather, Plaintiff speculates that HB 156 will eventually become so burdensome that Plaintiff will be unable to carry out these programs. (*See* DeSarro Decl. ¶¶ 17–18.) This is not imminence; Plaintiff has preemptively reallocated its business resources based on uncertainty. Such alleged harms do not support a finding of Article III injury. *See Clapper*, 568 U.S. at 416 (Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."). And to the extent Plaintiff argues present injury because it is "already handling an influx of inquiries . . . about how [Wyoming voters] can comply with the new DPOC requirements" (Opp'n 12), its claims are equally insufficient. When an organization, such as Plaintiff, is committed to educating voters about changes in the law (Compl. ¶ 22), a law that

6

motivates such ongoing core activity does not, by definition, "interfere" with it. *See Deep S. Ctr. for Env't Just.*, 138 F.4th at 320 ("Even under the pre-*Alliance* regime, standing based on diversion of resources required that the organization's activities in response to the defendant's conduct 'detract or differ from its routine activities.'" (quoting *Tenth St. Residential Ass'n v. City of Dallas*, 968 F.3d 492, 500 (5th Cir. 2020)).

Because Plaintiff has not alleged that it faces a non-speculative imminent harm from HB 156, its claims of organizational harm necessarily fail.

## II.     Plaintiff Has Not Established Associational Standing.

Plaintiff also fails to establish standing on behalf of any of its members. To invoke associational standing, a plaintiff must demonstrate that at least one of its members would have standing to sue. *Hunt v. Washington State Apple Comm'n*, 432 U.S. 333, 343 (1977).

### A.     Plaintiff Fails to Satisfy the Standard Articulated in *Hunt*.

Plaintiff argues that it satisfies the *Hunt* test because it "is composed of 'social justice, conservation, and labor organizations in Wyoming' with 'individual members who are qualified to vote in Wyoming,'" (Opp'n 16 (quoting Compl. ¶¶ 18, 21) (emphasis removed)), and "any individual members or constituents of Plaintiff or its member organizations who are qualified voters in Wyoming would have standing to challenge the DPOC requirement," (*id.*)

Plaintiff's reasoning is so broad that it effectively nullifies the requirements of associational standing. Were this Court to accept Plaintiff's broad view of associational standing, any organization that, by happenstance, has members who are registered voters would have standing to challenge any election regulation. Such an expansive view of associational standing is improper. *See Northeast Ohio Coal. for Homeless and Serv. Employees Int'l Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1010 (11th Cir. 2006).

For that reason, courts have long held that an organizational plaintiff cannot simply make

7

bare assertions and ask a court to trust that it satisfies the narrow requirements for associational standing. Rather, such an organization must typically identify its affected members. *See Producers of Renewables United for Integrity Truth and Transparency v. EPA*, No. 19-9532, 2022 WL 538185, at *3 n.2 (10th Cir. Feb. 23, 2022) ("Ordinarily, a prerequisite for organizations alleging associational standing is to identify their affected members." (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 497–99 (2009))). It is only when a plaintiff alleges that <u>all</u> of its members are injured that it need not do so. *See id.* Plaintiff's allegations of harm are not so sweeping here. (*See generally* Compl.)

Courts throughout the Tenth Circuit have routinely upheld these basic standing requirements. *See, e.g., Osage Producers Ass'n v. Jewell*, 191 F. Supp. 3d 1243, 1250 (N.D. Okla. 2016) (The first prong of the *Hunt* test for associational standing "requires an associational plaintiff to specifically identify at least one member harmed by the defendant's conduct." (citing *Summers*, 555 U.S. at 498–99); *N. New Mexicans Protecting Land Water Rts. v. United States*, 161 F. Supp. 3d 1020, 1041 (D.N.M. 2016) (citing *Am. Chem. Council v. Dep't of Transp.,* 468 F.3d 810, 820 (D.C. Cir. 2006), for the proposition that "an organization bringing a claim based on associational standing must show that at least one specifically-identified member has suffered an injury-in-fact."); *Padres Unidos de Tulsa v. Drummond*, No. CIV-24-511-J, 2025 WL 1444433, at *6 (W.D. Okla. May 20, 2025) (citing *Osage Producers Ass'n*, 191 F. Supp. 3d at 1250); *WildEarth Guardians v. U.S. Off. of Surface Mining, Reclamation and Enforcement*, 104 F. Supp. 3d 1208, 1220 (D. Colo. 2015) (same).

This standing requirement is particularly pronounced considering *Crawford v. Marion County Election Board*, in which plaintiffs were unable to "introduce[]evidence of a single, individual Indiana resident who will be unable to vote as a result of [Indiana law] or who will have

8

his or her right to vote unduly burdened by its requirements." *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 187 (2008).

The out-of-circuit cases cited by Plaintiff do not excuse its failure to identify injured members. For example, Plaintiff cites *Greater Indianapolis Chapter of NAACP v. Ballard*, 741 F. Supp. 2d 925, 932 (S.D. Ind. 2010), for the proposition that *Hunt's* requirement that an organizational plaintiff must "'include at least one member' does not mean that the member who could have brought suit on her own must be . . . named in the complaint.'" (Opp'n 20.) But in *Ballard*, the court <u>rejected</u> the NAACP's associational standing argument based on the fact that the NAACP "argue[d] in conclusory terms that '[The NAACP] is extremely likely to have members affected by the outcome of the present litigation.'" *Ballard*, 741 F. Supp. 2d at 932. And even if some of the cases Plaintiff cites support its conclusion, those cases are not binding on this Court and contradict decades of established precedent in this Circuit.

The only Tenth Circuit case cited by Plaintiff on this issue is *Speech First, Inc. v. Shrum*, 92 F.4th 947 (10th Cir. 2024). (Opp'n 20.) But "the sole issue" before the Tenth Circuit was "whether the use of pseudonyms by the declarants precluded [the plaintiff] from establishing Article III standing to bring the action." 92 F.4th at 949. Defendant does not contest the ability of Plaintiff to identify its members using pseudonyms. But, more importantly, the Tenth Circuit acknowledged that *Summers* stands for the proposition that an organization's allegedly harmed member must be specifically identified. *Id.* at 952 ("The Court [in *Summers*] explain[ed] that there needs to be a particular person who is injured. . . . That need can be satisfied by identifying the injured member as 'Member 1' just as well as by the name 'Samuel Clemens[.]'").

Consequently, Plaintiff has not satisfied the standard for identification that is well-defined by the Tenth Circuit, and its failure to do so is fatal to its claim of associational standing.

9

### B.     Plaintiff's Alleged Injuries to Its Individual Members Are Speculative.

Plaintiff's response to Defendant's argument that the harms to its members are too speculative to confer standing is minimal and unavailing.

First, Plaintiff contends that "the imposition of the DPOC requirement alone is sufficient harm for standing purposes." (Opp'n 21–22.) But that proposition is incorrect. Courts have consistently required more than the existence of a statutory obligation to satisfy Article III. Specifically, a plaintiff must allege an "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. A law's mere existence, without a plausible allegation that it will imminently interfere with a specific individual's interests, does not create standing. *Clapper*, 568 U.S. at 410. Second, Plaintiff suggests that it need not support its allegations of imminent harm to its members because "a plaintiff's allegations must be taken as true." (Opp'n 23.) But such is not the case where, as here, the allegations upon which plaintiff relies are legal conclusions "couched as . . . factual allegation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff assumes, based on statistical and comparative claims, that HB 156 will necessarily exclude eligible voters, but offers no nonconclusory allegations showing that this result is inevitable, let alone imminent. (Compl. ¶¶ 121–67.) On the contrary, HB 156 provides multiple forms of acceptable proof and gives Wyoming voters ample time to prepare for its implementation. (Opp'n Pl.'s Mot. Prelim. Inj. 11–12; Mot. 9.) As the U.S. Supreme Court has said, "allegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (cleaned up).

## CONCLUSION

Plaintiff has failed to allege either a concrete or imminent organizational injury or to identify a single affected member (or member of a member) for associational standing. Therefore, Defendant's Motion to Dismiss for lack of subject matter jurisdiction should be granted.

**DATED** this 18th day of July, 2025.

By: */s/ Michael A. Columbo*
Michael A. Columbo*
Mark P. Meuser*
DHILLON LAW GROUP, INC.
177 Post Street, Suite 700
San Francisco, CA 94108
Ph: (415) 944-4996
mcolumbo@dhillonlaw.com
mmeuser@dhillonlaw.com

Scott E. Gessler*
GESSLER BLUE LLC
7350 East Progress Place, Ste. 100
Greenwood Village, CO 80111
Ph: (720) 647-5320
sgessler@gesslerblue.com

Conner G. Nicklas (Wyo. Bar No. 7-5908)
THE FALEN LAW OFFICE LLC
300 East 18th Street
Cheyenne, WY 82003
Ph: 307-632-5105
Fx: 307-637-3891
conner@buddfalen.com

* Admitted *Pro Hac Vice*

*Attorneys for Defendant*
*Wyoming Secretary of State Chuck Gray*

## CERTIFICATE OF COMPLIANCE

This brief complies with Wyoming Local Civil Rule 7.1(b)(2)(C) because it contains 10 pages, not including the cover page, table of contents, table of authorities, signature lock, certificate of service, and this certificate.

**DATED** this 18th day of July, 2025

                                 By: */s/ Michael A. Columbo*
                                         Michael A. Columbo
                                         DHILLON LAW GROUP, INC.
                                         177 Post Street, Suite 700
                                         San Francisco, CA 94108
                                         Ph: (415) 944-4996
                                         mcolumbo@dhillonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of July 2025, a true and correct copy of the foregoing **REPLY IN SUPPORT OF DEFENDANT CHUCK GRAY'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)** was served by CM/ECF e-service to all counsel of record.

By: /s/ Michael A. Columbo
     Michael A. Columbo